No. 30,637.

JOHN KURRE, *Appellee*, v. GRAHAM SHIP BY TRUCK COMPANY, *Appellant.*

(15 P. 2d 463.)

Opinion filed November 5, 1932.

*J. E. McFadden, O. Q. Claflin,* both of Kansas City, *O. C. Mosman, Clay C. Rogers, Paul A. Buzard* and *Don E. Black,* all of Kansas City, Mo., for the appellant.

*David F. Carson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover damages for a personal injury. The plaintiff prevailed, and the defendant appeals.

The appellant maintained a freight depot at the southeast corner of Eighth and Hickory streets in Kansas City, Mo., for the purpose of receiving articles of merchandise to be transported by trucks to various places outside of Kansas City. The building faced the north on Eighth street and was about 100 feet wide. It extended south along the east line of Hickory street about 110 feet. The dock, or floor of the building, was about four and one-half feet above the level of the street. It extended the full length of the building from north to south and was about 30 or 31 feet wide. There were six large doors about eight feet wide and ten feet high along the west side of the building. These doors were located so that trucks loaded with merchandise could be backed up to the dock and the merchandise unloaded immediately onto the floor or dock. The office

was at the north end of the dock, and was partitioned off from and extended the full width of the dock. There was a door leading from the dock into the office. On the front or north side of the building immediately east of the office was a large door entering onto a dock, which extended south about as far as the office. Immediately to the east of this dock and at the northeast corner of the building was a large door and driveway through which trucks loaded with merchandise were driven in order that they might be unloaded on the dock on the inside of the building. At the southeast corner of the office was a small platform about four feet square, which was made for the purpose of enabling employees to go from the north dock to the east dock. From this platform there was a stairway leading to the ground. The platform was about four feet above the ground. The appellee was an employee of the Joseph Baum Packing Company and had been directed to deliver two packages of beef to the appellant for shipment. The appellee was not familiar with the arrangement of the building and had not, prior to the accident, been in the building. He reached the depot between nine and ten o'clock in the morning and backed his wagon up to the second door on the west or Hickory side of the depot for the purpose of unloading the beef upon the dock. The door was open, but he does not remember whether the other doors were opened or closed. His version of what he did is as follows:

"I pulled the meat off and hollered for a receiving clerk. Nobody replied. There was nobody there. I saw a little dim light back there behind the office, what they call the office now I find out later. A little dim light there behind the office I guess. The light was outside of the office, a little dim light, and I heard a voice there and I kept on walking and hollering, and when I got in there, between the other sacks and boxes, I stepped off with my left (foot).

"When I heard this voice I walked a little closer in the direction of the voice. On the way down there I saw there were other boxes of freight in the warehouse. I saw boxes and sacks I guess to be shipped. They were all right there behind the emergency dock and the receiving dock. . . . When I couldn't see anybody I thought I heard some voices somewhere. I heard somebody away back in there, so then I walked on back there, walking east from the door. . . . I walk around where it was vacant there; where there was nothing on the floor. I had to pick my way around between these boxes and kegs and sacks. . . . I continued to walk on in as near a straight line as I could dodging these boxes. . . . All this time I was yelling for somebody but nobody answered me, so I kept on walking and the first thing I know, I walked off the edge of the dock. . . .

"Q. Did you keep on walking right along? A. Not fast, I walked slow.

"Q. And you tell the jury that it was so dark you couldn't see anything in front of you? A. It was dark; I didn't know there was a dock there. I couldn't see anything in front.

"Q. Were you looking to see where you were stepping? A. Yes, I tried dodging them sacks and boxes.

"Q. But you got over to a place where it was so dark you couldn't tell whether there was any floor there or not? A. No.

"Q. That is right? That was the situation? And you were not feeling as you put your foot ahead? A. No, I didn't know where I was for ten minutes after I fell.

"Q. I am talking about before you fell. A. What do you mean?

"Q. You didn't put your foot out to see if there was any floor underneath you? A. Well, I tried to feel it. I am very careful there. But I guess I didn't go far enough.

"Q. Yes, but as you put your foot forward— A. I did.

"Q. (Continuing) Did you feel with your foot? A. I didn't feel anything; I feel the solid floor.

"Q. Oh, you were feeling up to that time. A. Yes.

"Q. And then you took another step and stepped off the edge? A. Yes.

"Q. And the place where you fell off was about the same height above the floor as this place where you had unloaded your meat? A. Something like that, I guess, about the same height, I guess.

"Q. You were not going toward the light, were you? A. Well, I heard a voice right there, you know, and the light didn't show up no light at all so you could see.

"Q. Were you walking toward the light, or not? A. No, I was just walking toward the voice that I hear somebody.

"With reference to these steps I fell right here and the steps was right up against here, wasn't but about three feet away from where I fell and hit them steps, my shoulder against them steps, my head and shoulder. I was about three feet away from the steps. Afterwards I discovered there was a place where I could have gone down them steps."

The appellee received severe injury. The extent of the injury is not contested by the appellant. The appellant demurred to the evidence, which was overruled by the court. On behalf of the appellant, William C. Morton testified that he was an employee of the appellant and at the time of the injury he was checking off a load of merchandise at the third or fourth door on the west side of the depot when the appellee unloaded the beef on the dock; that he spoke to the appellee and told him he was busy and would get to him in a few minutes; that he noticed the appellee standing on the dock but did not see him walk off, and did not know he was injured

until he found him on the dock holding his arm and apparently suffering.

A verdict was returned and a judgment entered in favor of the appellee in the amount of $2,000.

The appellant assigns as error the court's ruling on the demurrer to the evidence. It contends, first, that the appellee was not an invitee at the time he was injured, and second, that he was guilty of negligence as a matter of law. It is argued that when the appellee, on his own volition, started to explore the freight house he ceased to be an invitee and became a licensee to whom the appellant owed no duty. The appellant maintained a freight station or depot for the purpose of receiving merchandise to be shipped by truck. It maintained a dock on which to unload the merchandise for shipment, and an office for the transaction of the business incident to the shipment of merchandise. It held out to the general public an invitation to enter upon the premises for the purpose of unloading goods for shipment and to transact the business incident thereto. A business visitor may be defined as one who is invited or permitted to enter or remain upon the premises of another for a purpose directly or indirectly connected with the business dealings between them. Business visitors fall into two classes, first, those who enter upon the premises of another for a purpose connected with the business which the possessor conducts thereon, and second, those who come upon the premises for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the premises.

The appellant was engaged in the transportation of merchandise. The appellee entered on the premises to deliver merchandise for shipment. He comes within the first classification of business visitors. He was an invitee to participate in the business conducted by the appellant. The appellant's liability for the condition of the premises was only coextensive with the invitation, and it was incumbent upon it to keep its premises in a reasonably safe condition, and to give warning of latent or concealed peril to the full extent of the invitation. The invitation necessarily included the right to unload the goods upon the dock and to go from that point to the office of the shipping clerk, or to such place as the shipping clerk might extend an invitation for the purpose of completing the transaction. The appellee's statement is accepted as true. He unloaded the goods and looked about for a receiving clerk. He found none.

He called and heard a voice. He attempted to locate the voice, which he assumed was the clerk or party in charge of the premises, and in such attempt he was injured. He did not have the right on his own volition, and merely to satisfy curiosity, to attempt the exploration of the premises and wander into places which were in no way connected with the business he was about. In order to complete this business it was necessary for him to see and obtain a receipt from the shipping clerk, and while performing this duty he was within the scope of the invitation. We hold that the court properly overruled the demurrer on this ground. This, we think, is in accordance with the recognized authorities touching this question. (*Reese v. Abeles,* 100 Kan. 518, 164 Pac. 1080; *Needles v. Amusement Co.,* 104 Kan. 716, 180 Pac. 768; *Ryerson v. Bathgate,* 67 N. J. L. 337; *Faris v. Hoberg,* 134 Ind. 269; *Pauckner v. Wakem,* 231 Ill. 276; *Keeran v. Spurgeon Merc. Co.,* 194 Ia. 1240; 20 R. C. L. 69; 27 A. L. R. 579; 33 A. L. R. 176.)

It is next argued that the evidence on the part of the appellee established that he was guilty of contributory negligence as a matter of law. The appellee was bound to exercise due care for his own safety, whether acting within the invitation or otherwise. His conduct in his search for the shipping clerk is measured by the standard of the ordinary, prudent person. The defense of contributory negligence is usually a question of fact for the jury. If, however, there is no dispute in the evidence and the negligence of the plaintiff is patent, the question becomes one for the court to determine as a matter of law. (*Zumbrun v. City of Osawatomie,* 130 Kan. 719, 288 Pac. 584.) The appellee's story is that after unloading the merchandise on the dock he looked about for a shipping clerk. He saw a light and he heard a voice. He abandoned the pursuit of the light and followed the voice. In walking across the dock his progress was impeded by boxes and sacks of merchandise on the dock. Apparently this merchandise was near the east side of the dock, indicating that it had been unloaded on the dock from the driveway on the inside of the building. While this merchandise can hardly be said, as a matter of law, to be a signal of danger, yet it was of such a nature as would prompt the ordinary, prudent person to exercise great care in his progress. There was no open aisle indicating that this was a place for travel, and it was very dark—so dark that he could not see, and he made some effort to feel his way with his feet. Darkness is always a signal of danger.

It arouses the natural instinct of self-preservation. The appellee was traveling a course he did not know. He was confronted with darkness. It was his duty under such circumstances to refrain from proceeding further without finding out where he might safely go.

In the case of *Hudson v. Church of Holy Trinity,* 250 N. Y. 513, the plaintiff was working on the premises of the defendant and was directed to a toilet in the basement. She felt her way through the darkness to the end of the hall, where she fell downstairs, sustaining injuries. The court said:

"Assuming that the injured woman had permission from the defendant to go into the basement to make use of the toilet for her own convenience, in connection with the business which brought her to the premises, her status was that of an invitee. (*Vaughan v. Transit Development Co.,* 222 N. Y. 79.) As such the defendant owed her a duty of reasonable care. . . . Plaintiff's duty in the circumstances was to look out for herself and not to feel her way where it was 'so black and dark that she could not see anything.' She should have refrained from proceeding down the unlighted hallway in unfamiliar surroundings without finding out where she might safely go. She elected to feel her way along in the darkness. She was guilty of contributory negligence as a matter of law. (*Rohrbacher v. Gillig,* 203 N. Y. 413.)" (p. 515.)

In the case of *Bedell v. Berkey,* 76 Mich. 435, the court said:

"No one has any right to endanger himself, or to disturb other people's arrangements, by moving around in the dark in a strange room, into which he has entered of his own accord and without direction; and if injured, he is responsible for his own misfortune." (Syl. ¶ 3.)

In the case of *Flury v. Cent. Pub. House,* 118 Ohio St. 154, the court said:

"The testimony of a plaintiff invitee, in an action for negligence, that from a lighted room he opened a closed, metal-covered sliding door, was confronted with total darkness beyond the door, that he then stepped into such total darkness, to his injury, without any knowledge, information or investigation as to what such darkness might conceal, raises an inference of negligence on his part which, in the absence of any evidence tending to refute such inference, will require a directed verdict for the defendant." (Syl. ¶ 3.)

The citation of further authority is not necessary. The rule that one must make use of all his faculties in traveling an unfamiliar path is well established. This is common prudence. If he cannot see he proceeds at his peril, and, in the event of injury, is guilty of negligence as a matter of law.

The judgment of the district court is reversed, and the court is directed to enter judgment for the appellant.