CLIFFORD HAMMER, Appellee, v. LIBERTY BAKING COMPANY, Appellant.

No. 42545.

· MAY 14, 1935.

REHEARING DENIED SEPTEMBER 17, 1935.

Ernest L. Miller, for appellant.

E. C. Halbach and J. E. Purcell, for appellee.

ANDERSON, C. J.—This is an action for personal injuries sustained by the plaintiff as a result of falling into an elevator shaft in the building of the defendant company. The trial in the lower court resulted in a verdict and judgment for the plaintiff in the sum of $4,000. The defendant appeals. The fact situation, as shown by the record, discloses very little controversy as to the pertinent and material facts necessary for a determination of this appeal. The defendant-appellant, Liberty Baking Corporation, at and prior to the time of the happening of the accident out of which this controversy arises, owned and maintained a baking establishment in the city of Clinton, Iowa. Their building fronted on Fourth avenue, which was a street extending east and west, and was in the center of the block between Second and Third streets, extending south to the alley. The front of the

building on Fourth avenue was occupied by a small office and a garage for the use of the company. Back or south of the office and garage was the wrapping and shipping department and bakery ovens and equipment. There was an entrance into the shipping and bakery room from the alley near the southeast corner of the building. This consisted of an ordinary single door with glass panels and glass transom. There were two cement steps leading from the alley north to this entrance. There was also situated in the southwest corner of the building a small elevator room in which there was an elevator shaft leading from the basement to the second story of the building. The entrance to this elevator shaft was also from the alley, and this consisted of three or four cement steps against the south end of the building and leading south and up to a loading platform, approximately three and one-half feet by six feet, on a level with the floor of the elevator when the elevator was on that floor. There were double doors opening from this loading platform into the elevator shaft, and inside of these doors there was a gate or lattice wicket extending completely across the entrance and within a few inches of the top of the door opening. These doors opened outward, and the gate or lattice wicket could be opened by raising up on it and sliding it in grooves into which it was set. This gate or wicket was automatic and remained closed when the elevator was not on that floor. The door near the southeast corner of the building opened inward. There was no glass or opening of any kind in or through the double doors opening into the elevator shaft, and there were no windows or openings in the small room in which the elevator operated, except a sliding door. There were also two windows with glass, between the two doors described. There was no light of any kind in the alley on the night of the accident, but the shipping and bakery room, into which the single door we have described opened, was brilliantly lighted, and there were several employees working therein. The defendant's establishment was not equipped for retail trade. Their business was almost entirely that of wholesale. However, they had on occasions sold some bread at retail from the shipping and bakery room we have described. There was an entrance into this room through the garage on the front, and also the entrance, we have described, through the single door near the southeast corner of the building on the alley. The record discloses that but a few customers patronized the business

in a retail way, and that when they did they obtained entrance into the main room through a door leading from the garage to the bakery and workroom. The plaintiff had on quite a few occasions gone into the shipping and bakery room through the garage and purchased bread at retail. On several occasions he found the door leading from the garage to the bakery room locked and he would have to rattle it or make a noise to attract the attention of the employees in the bakery room. On one occasion he testifies that one of the defendant's employees told him that if he could not get in the front door through the garage he could go around to the alley and get into the building that way. He had done this on one prior occasion and had gone into the bakery room through the single door near the southeast corner of the building. About 9 o'clock in the evening of March 11, 1932, the plaintiff went to the defendant's plant to purchase bread, found the front doors were locked, and went to the rear of the plant in order to gain entrance there. The alley was totally dark. The plaintiff had driven into the alley with his automobile with the lights burning and stopped in the rear of the building and between the two doors we have described. He testifies that the rear of the building was dark; that the presence of the elevator shaft in the southwest corner of the room was unknown to him, and that it could not be seen on account of the darkness; that he got out of his car and went up on the steps to the loading platform and opened one of the doors leading into the elevator shaft which was unlocked, and he says in his direct examination, "I felt this wicket. This wicket I got hold of and it gave easily, lifted up very easily. I didn't know where I was and I fell 18 feet down the elevator shaft. I had been to that back entrance once before and the first time I got to the right door. I could see the shipping room from the back door. It was all lit up. When I opened the door and encountered this wicket I felt this obstruction and it lifted up easily. I lost my balance. I might have taken one step. The room just inside the door was pitch dark. I could see nothing except I felt the gate. I thought the door I was going into was the same door I had gone into before." In cross-examination he testified: "All the evenings when I went over there the shipping room and the baking room were brilliantly lighted by artificial light. I didn't know, to tell the truth, that I was getting in the right place. I was groping around there in a dark alley and went into a totally unlighted

building. When I went up to the door on a previous occasion I went up to a brilliantly lighted room where men were at work. When I came there on this particular occasion I found no lights and went into a completely dark room. After I opened the door I found something barring my progress. It was a wood wicket like. I didn't see anything. I felt it. I felt that something obstructed my progress and it was wood and with my hands on that I could feel it was slats of wood, because my hand would naturally go into it. I found out it was movable. I had to lift up whatever it was. I did find an obstruction there that I had to remove by raising it up before I could get into that elevator shaft. I mean to state at the present time that I went into a place where it was so dark that I didn't know what it was that I was removing and couldn't see at all and all I know about it now is what I felt. I thought I was going to the same door I went into before. The door I went into before was the door that entered the baking room where the men were at work, and on entering that room when I came up to that door and immediately before me I saw the bread-mixing machines and paraphernalia that was around the bakery and the men at work. I didn't see that this time. I saw nothing. I just felt the wicket. When I raised up the wicket it stayed up of its own accord. As near as I can recollect, I took one step and dove down.''

The testimony of the defendant shows that on the night in question the baking room was brilliantly lighted and there was nothing to prevent the light from showing through the glass in the southeast door and the windows between the two doors, and that the elevator room was totally dark. The evidence shows that the plaintiff fell about 18 feet down the elevator shaft, and was grievously, painfully, and permanently injured. Such in brief are the facts, as shown by the record, material to the disposition of the case here.

The plaintiff claims the defendant was negligent (1) in failing to warn the plaintiff of the existence of the elevator shaft; (2) in failing to properly lock and fasten the doors leading to the elevator shaft; (3) in failing to light the rear of the building; and (4) in failing to instruct or warn the plaintiff to use the easterly or single door in gaining entrance to the plant from the rear.

The defendant contends that none of the grounds of negligence as detailed by the plaintiff were tenable and that defend-

ant was not guilty of any negligence which would warrant or sustain a recovery by the plaintiff, and the defendant further contends that the plaintiff's own negligence was the proximate cause of the accident and resulting injury, and that the plaintiff was guilty of negligence causing or contributing to the accident.

A motion for a directed verdict was made by the defendant at the close of the plaintiff's testimony, and was again renewed at the close of all of the testimony, which motions the court over-ruled, and submitted the case to the jury on all of the grounds of negligence detailed above. The defendant's motion to set aside the verdict and for a new trial was based upon the grounds that the defendant was not guilty of any negligence which caused the accident; that the accident was due entirely to the negligence of the plaintiff himself; and that the negligence of the plaintiff contributed to the accident, and, further, many exceptions were taken to the court's instructions and urged as grounds for a new trial.

In the view we take of the case it will not be necessary for us to consider the exceptions and objections to the instructions of the court, except to say that some of the instructions of the court could not be approved. We might accept this opportunity to again call attention of the trial courts to refrain from copying into the instructions the plaintiff's petition practically in full. We have repeatedly criticized this procedure, and now again call attention to the fact that it should be avoided.

As to whether or not the defendant was negligent in any of the particulars alleged against it as negligence we will not discuss. However, we may say in passing that it is a serious question whether, under this record, the defendant was guilty of negligence upon which a recovery could be had; but assuming for the purposes of this opinion only that the defendant was negligent, it is our opinion, and we are abidingly satisfied, that the plaintiff was guilty of negligence which caused or contributed to cause the accident of which he complains.

It is true the defendant was under a legal obligation to exercise reasonable and ordinary care to see that its place of business could be used with reasonable safety by those who were invited to come upon the premises, but this does not relieve a licensee or invitee from using a like degree of care for his own safety. We are assuming for the purpose of this discussion that the plaintiff at the time of the happening of the accident was an

invitee. There is no dispute in the record concerning the acts of the plaintiff immediately prior to and at the time of the accident, and the question then arises as to whether or not fair-minded and reasonable men could differ with respect to the imprudence of the plaintiff's acts immediately before and at the time of the accident. It is the settled law of this state that where the facts are clear and undisputed and the existence and effect of plaintiff's contributory negligence apparent to every fair-minded and reasonable man, so that but one conclusion can be fairly drawn therefrom, then the trial court should direct a verdict for the defendant on the ground that the plaintiff's negligence or want of ordinary care and prudence for his own safety caused or contributed to the accident. Murphy v. Iowa Electric Co., 206 Iowa 567, 220 N. W. 360, and many cases there cited.

The appellee cites many cases none of which, however, we deem determinative of the question here presented. Many of the cases cited by appellee are those involving defects in sidewalks and streets. These cases are not at all analogous to the case at bar. A pedestrian has the right to assume that a city or town will keep its streets and sidewalks in a reasonably safe condition for ordinary travel thereon, and, without warning or notice of a defect, a pedestrian would be warranted in proceeding upon a public street or sidewalk even in the dark, but such is not the rule applicable in cases such as the one we are considering.

The appellee cites the case of Downing v. Merchants National Bank, 192 Iowa 1250, 184 N. W. 722, 20 A. L. R. 1138. The facts in that case are distinctly different from the facts in the instant case, as will be disclosed by the following quotation from page 1258 of the opinion:

"It was for the jury to say whether it was negligence to permit the door leading to this stairway to be open under the circumstances disclosed by the record, if the jury found that it was open, and to leave the same without barrier or guard to protect one who might enter the vestibule."

In the instant case, the doors to the elevator shaft were closed, and in addition to this there was a wicket or barrier or guard which absolutely barred the progress of any one attempting to get into the elevator room.

In the case of Keeran v. Mercantile Co., 194 Iowa 1240, 191

N. W. 99, 27 A. L. R. 579, the facts disclose that the plaintiff stepped through a doorway in a public place of business and fell to the basement below. The record shows the stairway was unlighted and was dark, and there was no barrier or anything to warn the plaintiff as to the danger, but in this case the court directed a verdict for the defendant. There is nothing in the case which supports the contention of the appellee in the case at bar.

In Graham v. Ochsner, 193 Iowa 1196, 188 N. W. 838, it will be noticed that the court particularly emphasized the fact that the doors leading to the elevator shaft were ordinary doors and that there was no railing to guard the shaft; in addition, the doors were partly open when the plaintiff walked into the shaft. The plaintiff in that case was contending that there should have been there an additional guard or rail or wicket such as is ordinarily used to guard an elevator shaft, and we can discover nothing in the case which supports the appellee's position in the case we are considering.

There are many cases reported in which the facts are very similar to the facts as disclosed by the record in the instant case, and in which the courts of the various states have passed directly upon the question we now are considering.

In Benton v. Watson, 231 Mass. 582, 121 N. E. 399, the plaintiff was asked to call on the defendant at the Boston Opera House, and that if the front door was not open to go around to the back door and come in. Plaintiff tried the front door and was directed by a young man to go around to the back door. He went to the rear and entered through a door, looked around, and it was very dark. He kept going forward. There was no light in the hall. He could see just a glimmer. He stepped into space and fell and injured himself. The trial court directed a verdict for the defendant, and in affirming the action of the lower court the Supreme Court of Massachusetts said:

''We think the verdict was directed rightly because, as a matter of law, the plaintiff was not in the exercise of due care. * * * After entrance at the stage door, the plaintiff was in a strange building, in a hall that he had not before seen, which was 'very dark,' had 'not a bit' of light, 'no artificial or natural light or anything.' The plaintiff knew and appreciated the measure and degree of darkness, he was not misled by any act or

omission of the defendant, and he knew, as all men of ordinary experience must know, that one who walks in the total darkness of a strange hall is likely to encounter obstructions to his passage and pitfalls to his feet.''

Kurre v. Graham Ship By Truck Co., 136 Kan. 356, 15 P. (2d) 463, 466, was a case very similar in its facts to the one at bar. The plaintiff was unfamiliar with the arrangements of a building to which he went to unload merchandise upon a loading dock. The door was open. He saw a dim light behind the office. He also heard a voice and walked forward and stepped into space. He testified that it was dark and he could not see anything. A verdict was returned in his favor in the trial court, and in reversing that decision the Supreme Court of Kansas said:

''The appellee was bound to exercise due care for his own safety, whether acting within the invitation or otherwise. His conduct in his search for the shipping clerk is measured by the standard of the ordinary prudent person. The defense of contributory negligence is usually a question of fact for the jury. If, however, there is no dispute in the evidence and the negligence of the plaintiff is patent, the question becomes one for the court to determine as a matter of law. * * * The appellee's story is that after unloading the merchandise on the dock he looked about for a shipping clerk. He saw a light and he heard a voice. He abandoned the pursuit of the light and followed the voice. * * * It was very dark—so dark that he could not see, and he made some effort to feel his way with his feet. Darkness is always a signal of danger. It arouses the natural instinct of self-preservation. The appellee was traveling a course he did not know. He was confronted with darkness. It was his duty, under such circumstances, to refrain from proceeding further without finding out where he might safely go. * * * This is common prudence. If he cannot see he proceeds at his peril, and, in the event of injury, is guilty of negligence as a matter of law.''

To the same effect, see Hudson v. Church, 250 N. Y. 513, 166 N. E. 306; Flury v. Publishing House, 118 Ohio St. 154, 160 N. E. 679; Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580.

While it is true, as we have assumed, that the plaintiff was an invitee upon the premises of the defendant and this imposed

upon the defendant the duty to keep its premises in a reasonably safe condition and to warn plaintiff of latent or concealed perils, yet that relation did not entitle the plaintiff to act heedlessly in total disregard of his own safety. His duty in the circumstances was to look out for himself and for his own safety. When he opened the door to the elevator shaft he was met with absolute darkness. He says he could not see anything. In addition to this he was met with the gate or wicket barring his progress. There was no emergency or occasion for haste, and apparently without thought or hesitation, investigation, or knowledge of what was concealed by the darkness, and with no thought or consideration as to the purpose of the gate or barrier, he deliberately stepped into the darkness and fell to the bottom of the shaft. The darkness alone should have been a natural warning to him, and in addition to this he met the obstruction or gate barring his further progress. According to his own testimony he deliberately lifted this gate out of his way. He says he knew that he was not in the same door that he went into before, because when he opened the door on the occasion of his prior visit it opened directly into the lighted bakery and workroom where he desired to go. He must have known and would know, as soon as he opened the door leading to the elevator on the night in question, that he was not entering the room that he desired to enter. The existence of the total darkness and of the gate or barrier should have warned him to proceed no further without investigating what was beyond. He did not even try to discover what was beyond the elevator door and gate. If he was unable to see, such inability imposed upon him the duty to exercise the greatest care and refrain from proceeding further without finding out if he could safely do so.

The plaintiff was clearly guilty of contributory negligence in failing to use that prudence and ordinary care which was incumbent upon him under the circumstances confronting him. Without further prolonging the discussion, we are constrained to hold that the trial court erred in not sustaining appellant's motion for a directed verdict and in overruling appellant's motion for a new trial. A reversal necessarily follows.—Reversed.

ALBERT, MITCHELL, PARSONS, HAMILTON, KINTZINGER, RICHARDS, and POWERS, JJ., concur.