Nos. 38,936, 38,937

ARNOLD F. ROEHRMAN, *Appellee* and *Cross-Appellant,* v. THE D. S. & O. RURAL ELECTRIC COOPERATIVE ASSOCIATION, INC., and THE KANSAS POWER AND LIGHT COMPANY, a Corporation, *Appellants* and *Cross-Appellees.*

(256 P. 2d 872)

Opinion filed May 9, 1953.

*N. E. Snyder,* of Kansas City, argued the cause, and *Edwin P. Morrison, Robert L. Hecker, Henry W. Buck, Wm. B. Cozad,* and *Randolph P. Rogers, Jr.,* all of Kansas City, Missouri, were with him on the briefs for the appellant and cross-appellee, The D. S. & O. Rural Electric Cooperative Association, Inc.

*Robert E. Russell,* of Topeka, argued the cause, and *M. F. Cosgrove, Balfour S. Jeffrey,* and *Clayton E. Kline,* all of Topeka, were with him on the briefs for the appellant and cross-appellee, The Kansas Power and Light Company.

*Leonard O. Thomas,* of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder,* and *Lee E. Weeks,* all of Kansas City, were with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover damages for personal injuries sustained by plaintiff as the result of having come in contact with a high tension line used for the transmission of electricity. The defendants appeal from the trial court's action in overruling separate demurrers to the plaintiff's amended petition. Upon reaching this court each appeal was given a distinct number. However, that fact may be disregarded as the issues involved are common to all parties and the cases have since been consolidated. The cross-appeal is from orders sustaining identical motions to strike one paragraph from the amended petition.

The amended petition serves a dual purpose in that it discloses the factual picture existing at the time of the accident in question as well as the alleged omissions and defects on which the defendants rely as grounds for sustaining their single assignment of error to the effect the trial court erred in overruling their separate demurrers to the challenged pleading which, omitting its formal averments, its allegations relating to the extent of the injuries sustained, and its prayer, reads:

"1. That the State Highway Commission is a corporation organized under the laws of the State of Kansas, and is now and was at all times hereinafter set forth, the employer of Arnold F. Roehrman, who suffered injuries in the manner hereafter set forth; that at the time the said injuries were suffered the said Arnold F. Roehrman was engaged in the performance of his duties as an employee of the said State Highway Commission, and that the said State Highway Commission and Arnold F. Roehrman were at said time subject to the provisions of the Workmen's Compensation Laws of the State of Kansas; that the said Arnold F. Roehrman has been paid a total of Eight Hundred Four and 65/100 ($804.65) Dollars workmen's compensation by the State Highway Commission pursuant to the said statutes, and that this action is being maintained by the said State Highway Commission for its benefit and for the benefit of Arnold F. Roehrman, as their interests may appear.

"2. That Arnold F. Roehrman is now, and was at all the times hereinafter set forth, a resident of the City of Woodbine, in the State of Kansas, and as an employee of the State Highway Commission, on the 20th day of August, 1949, had the duty of maintaining, or supervising the maintenance of a portion of Highway No. 77 between Junction City, Kansas, and Woodbine, Kansas; that the defendant, The D. S. & O. Rural Electric Cooperative Association, Inc.,

is, and was on the 20th day of August, 1949, a cooperative association, organized according to the laws of the State of Kansas, engaged in the business of transmitting and selling electricity, and that the defendant, The Kansas Power and Light Company, is a corporation doing business in the State of Kansas, and is now and was on the 20th of August, 1949, engaged in the business of manufacturing, transmitting and selling electricity.

"3. That prior to the 20th day of August, 1949, the defendant, The D. S. & O. Rural Electric Cooperative Association, Inc., had erected, and then owned, electrical high tension transmission lines along a portion of Highway No. 77 between Woodbine, Kansas, and Junction City, Kansas, and that electrical energy was on said date transmitted along the wires on said line at a pressure of 7,200 volts, and that the electrical energy so transmitted along the said transmission line hereinabove described, at the voltage hereinabove set forth, was and for many years prior thereto, had been purchased from The Kansas Power and Light Company, defendant herein; that plaintiff does not know whether said wires were located on highway right-of-way or private property but believes them to have been located on highway right-of-way.

"4. That on the 19th day of August, 1949, at about the hour of midnight or shortly thereafter, a pole was caused to break, which pole supported three wires, two of said wires being charged with a voltage of 7,200 volts each, the third being a ground wire, all of which were owned and installed by the defendant, The D. S. & O. Rural Electric Cooperative Association, Inc., along the said Highway No. 77; that the said broken pole was located at a point approximately three-fourths miles east of the Dickinson-Gray(sic) County Line, as it intersects the said highway; and that as a result of said break about two-thirds of the said pole, to which none of the wires were attached, fell to the ground, and the remaining portion of the said pole, including the crossarm to which the said two live wires and the ground wire were attached, was caused to be suspended over the said Highway No. 77, by reason of the fact that a guy wire, anchored to another pole on the opposite side of the highway and also attached to the said pole near the place where the crossarm was attached, caused the said crossarm and wires thereon to swing free and be suspended about six or seven feet above the edge of said highway.

"5. That the said pole was caused to break and fall as a result of the fact that an automobile was driven off of the paved portion of said highway, and into said pole, by a soldier then in the armed services of the United States, stationed at Fort Riley.

"6. That about four hours after the said pole was broken, and after the said crossarm was suspended over the highway as aforesaid, the plaintiff herein was informed of said fact, and the plaintiff immediately, in accordance with his duty as a maintenance man for the State Highway Commission, went to the place where the pole was broken. Upon arriving at the scene, the plaintiff noticed the automobile in which there was no driver or passenger which had been driven against the pole, and he searched for the persons, or the bodies of persons who had been riding in the said automobile for the purpose of rendering such assistance and aid as might be necessary. In the course of said search the plaintiff struck, just under his nose, one of the said wires which had, prior to the break of said pole, been attached to the said crossarm, and as a result thereof received a shock of electricity rendering the plaintiff herein

unconscious, and causing the grievous, serious and permanent injuries hereinafter more specifically described.

"7. That the plaintiff's injuries were sustained at about the hour of 4:00 o'clock A. M., on the morning of August 20, 1949, and about four hours after the said pole had been broken in the manner hereinabove described, and that the wire from which the plaintiff received the electrical shock had been attached to the crossarm upon the aforesaid pole, prior to the time the said pole was broken, but that as an immediate result of the breaking of the said pole, this said wire either broke, or the said wire, as a result of the breaking of the said pole, became loose from the said crossarm and hung in an arc between the pole on either side of the said broken pole, with the lowest part of the arc being on the ground, and that the said wire carrying the said 7,200 volts laid upon the ground as a result of being broken or because it sagged to the ground, that the said broken pole was located at the farthest point of a curve in the said transmission line; that the transmission line with which the plaintiff came in contact was grounded, either because it was broken and the ends or parts of said wire between the plaintiff and the nearest pole between plaintiff and the source of energy were laying on wet ground, or because the said wire hung in an arc between the two poles on either side of the broken pole with about 100 feet at the base of the arc laying or swaying against wet ground. The plaintiff states that he made no inspection and does not know whether said wire was grounded because the wire touched the ground because it was broken or because the two poles on either side of the broken pole failed to suspend said wire in the air, and alleges that the said grounding was at or within a few feet of the place where plaintiff was injured.

"8. *That transmission lines and poles carrying electricity frequently break; that in the exercise of the highest degree of care and for the purpose of protecting persons and property, the owners of such transmission lines carrying electricity at high voltage provide fuses or reclosers for the purpose of shutting off the flow of electricity through the said lines in the event of a break, in the said lines, or in the event there is a fault in the said lines; that if said defendant had equipped its said line with fuses or with reclosers or had properly maintained the same, the breaking of the said line, or the contact between the said line and the ground would have caused the electricity to have been shut off at the time the said pole broke or within a few seconds thereafter, and the said line, at the time the plaintiff received a charge of electricity, would not have been carrying an electrical charge, and the plaintiff would not have been injured.* (Italics supplied.)

"9. That the injuries suffered by the plaintiff as hereinafter alleged were caused by the concurrent negligence and carelessness of the defendants, and each of them, in the following respects, to-wit:

"(a) That the said defendant, The D. S. & O. Rural Electric Cooperative Association, Inc., did not maintain on its transmission line proper fuses or reclosers, which would have shut off the flow of electricity, as a result of the fault on the said line hereinabove set forth, caused by the break of said line or by the fact that said line was in contact with the ground, which fact was known, or in the exercise of ordinary reasonable care should have been known, by the defendant, The Kansas Power and Light Company.

"(b) That the said defendant, The D. S. & O. Rural Electric Cooperative Association, Inc., did not inspect or maintain such fuses or reclosers as had theretofore been installed on the said transmission line in a careful and prudent manner, which fact was known or should have been known by the defendant, The Kansas Power and Light Company. That as a result thereof the said fuses or reclosers, if any, on the said transmission line, failed to properly operate as a result of the fault hereinabove described.

"(c) That the defendant, The Kansas Power and Light Company did not own or properly maintain at its substation, at the place where power was furnished to its codefendant, The D. S. & O. Rural Electric Cooperative Association, Inc., any fuses or reclosers which would shut off the flow of electricity to the lines of The D. S. & O. Rural Electric Cooperative Association, Inc., in the event of a fault in the said lines of said The D. S. & O. Rural Electric Cooperative·Association, Inc., or in the event the said line broke, or in the event the said lines were incapable of properly transmitting electric energy by reason of a grounding or partial grounding of said line; that in the exercise of the highest degree of care, the said The Kansas Power and Light Company was obligated to install and properly maintain such fuses or reclosers as part of its said substation for the said purposes.

"(d) That the defendant, The Kansas Power and Light Company, constituted the defendant, The D. S. & O. Rural Electric Cooperative Association, Inc., its agent, for the purpose of maintaining reclosers and fuses at the said substation, and that the said defendant, The Kansas Power and Light Company, is responsible for the failure of the defendant, The D. S. & O. Rural Electric Cooperative Association, Inc., to carefully erect and carefully maintain 'an automatic reclosing circuit breaker or its equivalent' at the said substation, all as hereinabove set forth.

"(e) That the pole which broke, as hereinabove described, was not such a pole as should have been installed upon or used in connection with a transmission line carrying voltage of electricity, in the manner aforesaid, for the reason that the said pole was brittle and was a pole likely to break and shatter as a result of any sudden shock, which fact should have been known by defendants, in the highest degree of care.

"(f) That the defendants, and each of them, should, in the exercise of the highest degree of care, have known of the existence of the said fault and of the break of said pole, and the short in the said line within a few seconds after said pole was broken, or after said line was energized after other repairs on said line had been completed, and should, in the exercise of ordinary and reasonable care, have either repaired the said break or shut off the electricity in the said line long before the plaintiff was injured."

Defendants filed separate but identical motions to strike paragraph 8 from the foregoing pleading and like motions to make certain allegations thereof more definite and certain. The last mentioned motion was overruled and the first sustained. Thereafter defendant, The Kansas Power and Light Company, demurred to the amended petition solely upon the ground it failed to state facts sufficient to constitute a cause of action. The defendant, D. S. & O.

Rural Electric Cooperative Association, Inc., demurred thereto for the same reason and in addition specified it was doing so particularly because such pleading (*a*) contained no allegation of any breach of any duty owing from it to the plaintiff; (*b*) showed plaintiff's negligence was the cause of or contributed to any injuries he had received, and (*c*) disclosed that its negligence, if any, was not the proximate cause of such injuries. When these demurrers were overruled defendants perfected the appeals to which we have heretofore referred. Subsequently plaintiff gave notice of his cross-appeal.

Appellants argue that their motions to make definite and certain, directed against the amended petition to which we shall hereafter refer as the petition, having been successfully resisted, make that pleading subject to strict construction and cite *Kinderknecht v. Hensley*, 160 Kan. 637, 164 P. 2d 105; *Donie v. Associated Co., Inc.*, 173 Kan. 753, 252 P. 2d 609, in support of their position. It may be conceded, that when existing conditions warrant, the authorities cited as sustaining this position so hold. The trouble from their standpoint is that a motion to make a petition more definite and certain does not lie when the pleading attacked is sufficiently definite and certain to make the nature of the charge apparent and that a petition which fairly apprises the defendant of what the plaintiff's claim is to be is not subject to a motion to make more definite and certain. When that is the situation, where such a motion is properly resisted and overruled, the decisions on which appellants rely have no application and the attacked pleading is subject to liberal construction notwithstanding. (See *Morris v. Dines Mining Co.*, 174 Kan. 216, 256 P. 2d 129, and decisions there cited.)

Nothing would be gained by taking up the two motions and discussing *seriatim* the different paragraphs thereof. It suffices to say a careful examination of those paragraphs discloses that some of them sought to have the appellee set out the details making up the ultimate facts alleged while others related to matters of defense which appellants could have pleaded by way of answer without prejudice to their rights. When the petition is surveyed in its entirety we have little difficulty in concluding that its allegations advised appellants fully of appellee's claim and the relief sought. The result, applying the rule of the decisions to which we have last referred, is that that pleading was not vulnerable to the motions to make more definite and certain and that its allegations are still sub-

ject to liberal construction. This, under the rule so well established as to scarcely require citation of the authorities supporting it (see West's Kansas Digest, Pleading, §§ 34[1], 214[2], and Hatcher's Kansas Digest [Rev. Ed.], Pleading, §§ 35, 155), means that in determining whether the challenged pleading states a cause of action all of its well pleaded allegations must be accepted as true and given the benefit of all favorable inferences.

Turning again to the petition, which has been set forth at length and for that reason will not be unduly labored, it may be said that after examining its allegations in the light of the rule to which we have just referred we have become convinced it must be construed as stating that at 4 a. m. on August 20, 1949, while engaged in the performance of his duties as a highway maintenance man, at a place where he was rightfully entitled to be, the plaintiff, who had been advised the accident causing the conditions described in paragraphs 4, 5 and 6 of the petition had occurred some four hours prior thereto, came in contact with a broken high voltage transmission line and sustained injuries which were caused by the defendants' carelessness and negligence with respect to the particular matters set forth in subsections (a), (b), (c), (d), (e) and (f) of paragraph 9 of the petition. So construed, and accepting all those allegations as true for purposes of ruling on the demurrers, we are unwilling to say the petition shows upon its face appellee was guilty of contributory negligence as a matter of law, in that he did not exercise ordinary care for his own protection and safety under the conditions and circumstances therein set forth, as each of the appellants contend. That, in our opinion, when the allegations of the pleading are considered in their entirety is a question on which the minds of reasonable men might differ and therefore is one which, if established by the degree of proof required, should be submitted for decision to a jury under proper instructions as to the law applicable to the rights of the parties under the issues, facts and circumstances raised and disclosed by pleadings and evidence.

The appellant, The Kansas Power and Light Company, makes no further contention respecting the propriety of the trial court's ruling on its demurrer. However, the appellant, Rural Co-operative Association, raises two additional questions to which we shall now give our attention. The first of these is that the petition fails to disclose it breached any duty to appellee and hence the petition fails to state a cause of action. We do not agree. The clear and unequivocal import of some of the allegations, to which we have heretofore

referred, is that such appellant, in the exercise of the degree of care required of it in the maintaining of its electrical transmission lines, failed to maintain proper fuses or reclosers which would have shut off the flow of electricity, also that it failed to inspect or maintain such fuses or reclosers as had theretofore been installed on the transmission lines in a careful and prudent manner, and that if it had done so appellee would not have sustained his injuries. Other allegations of the pleading are to the effect that in the exercise of the highest degree of care such appellant would have known of the existence of the short in the line within a few minutes and should, in the exercise of ordinary and reasonable care, have either repaired the break or shut off the electricity in the line long before appellee was injured by coming in contact therewith. Under such allegations, which must be conceded as true for present purposes, it cannot be successfully argued that the petition charges no breach of duty against the Co-operative Association.

Next the Co-operative Association argues the petition shows no negligence on its part which was the proximate cause of any of the injuries sustained by appellee. The gist of this argument is bottomed upon the premise that the breaking of the pole, resulting in the breaking in the line, was the proximate cause of the injuries sustained. Again we must disagree. The mere fact that the act of another was responsible for the break in the line did not relieve such appellant from the acts of negligence charged against it in the petition if established as alleged. The books are full of cases holding that there may be more than one proximate or legal cause of an injury. See, *e. g., Rowell v. City of Wichita,* 162 Kan. 294, 302, 303, 176 P. 2d 590, and cases there cited.

In reaching the conclusions just announced we have not attempted, nor do we deem it necessary, to discuss the decisions dealing with, or write a thesis on, the subject of the rights, duties and liabilities of power companies engaged in the transmission of electricity. Whether appellee can prove the allegations of his petition, appellants can assert and establish defenses with respect thereto, or what the legal rights and liabilities of the parties on joinder of issues may be under the evidence adduced on a trial of those issues, are matters with which we are not presently concerned. All that is required for purposes of this appeal is to hold, as we have concluded, that under the facts, conditions, and circumstances set forth in the petition the trial court did not err in overruling the demurrers to that pleading.

One other question remains. In support of his cross-appeal appellee contends that paragraph 8 of the petition, which we have italicized for purposes of emphasis, was erroneously stricken by the trial court on grounds the allegations of such paragraph were repetitious, conjectural and speculative. We doubt such allegations were speculative or conjectural. However, in view of other allegations of the petition, they were repetitious but we have no doubt, that under those allegations, appellee can still offer evidence respecting the matters set forth in the stricken paragraph. Therefore, it cannot be said the trial court erred in sustaining the motion to strike such paragraph from the petition.

The judgment is affirmed.