No. 39,646

ARNOLD F. ROEHRMAN, *Appellee*, v. THE D. S. & O. RURAL ELECTRIC COOPERATIVE ASSOCIATION, INC., *Appellant*.

(283 P. 2d 411)

Opinion filed May 7, 1955.

*Henry W. Buck,* of Kansas City, Missouri, and *N. E. Snyder,* of Kansas City, argued the cause and *Karl F. Schmidt,* of Kansas City, Missouri, was with them on the briefs for the appellant.

*L. O. Thomas,* of Kansas City, argued the cause and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder,* and *L. E. Weeks,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action brought pursuant to G. S. 1949, 44-504 by the state highway commission for its own benefit and for the benefit of Roehrman, one of its employees, to recover for damages alleged to have been sustained by the employee when he came into contact with a wire of defendant's carrying electric current, and for benefits paid the employee, pursuant to the workmen's compensation act. At the conclusion of the trial, the trial court granted plaintiff a new trial. The defendant, D. S. & O. Rural Electric Cooperative Association, Inc., has appealed.

The petition alleged first that Roehrman was an employee of the commission at the time of his injury and they were both subject to the workmen's compensation act and the action was being maintained by the commission for its benefit and that of Roehrman, as their interest might appear; that on August 20, 1949, Roehrman had the duty of supervising the maintenance of highway 77 between Junction City and Woodbine and defendant, D. S. & O. Rural Electric Cooperative Association, Inc., was engaged in transmitting and selling electricity and the defendant, Kansas Power and Light Company, was engaged in that business; that prior to August 20,

1949, D. S. & O. had owned and operated high tension lines along a portion of the above highway and on that date electric energy was transmitted along that line at a voltage of 7,200 volts and this electrical energy was purchased from the Kansas Power and Light Company; that on August 19, 1949, at about midnight a pole was caused to break which supported three wires, two of them being charged with 7,200 volts, all of which were owned and installed by D. S. & O. along highway 77; and as a result two-thirds of the pole, to which none of the wires were attached, fell to the ground and the remaining portion, including the cross arm, to which the live wires and the ground wire were attached, was suspended over highway 77; that the pole was broken when an automobile was driven off the highway against it; that about four hours after the pole was broken plaintiff was informed and in accordance with his duty went to the place; upon arriving he noticed an automobile with no driver, which had been driven against the pole, and he searched for persons or bodies for the purpose of rendering aid or assistance; in the course of such search plaintiff struck, just under his nose, one of the live wires and as a result received a shock causing serious and permanent injuries; that his injuries were sustained about 4 a. m. on August 20, 1949, about four hours after the pole was broken, and the wire he struck, as an immediate result of the breaking of the pole, was either broken or became loose and hung in an arc between the poles on either side of the broken pole with the lowest part of the arc being on the ground and the wire carrying the 7,200 volts; that plaintiff did not know whether the wire was grounded because it touched the ground, because it was broken or because the poles on either side of the broken pole failed to suspend it in the air; and that the grounding was within a few feet of the place where plaintiff was injured.

The petition further alleged that power lines frequently break and for the purpose of protecting persons and property the owners of them provide fuses or reclosers for the purpose of shutting off the flow of electricity through them in the event there should be a fault in the lines, and if defendant had equipped its lines with fuses or reclosers and had properly placed them the breaking of the line or the contact with the ground would have caused the electricity to have been shut off when the pole broke and the line at the time the plaintiff received a charge of electricity would not have been carrying an electric charge and the plaintiff would not have been

injured. It further alleged that the injuries suffered by the plaintiff were caused by the concurrent negligence of defendants in that D. S. & O. did not maintain proper fuses or reclosers, which was known or in the exercise of ordinary care should have been known by defendant, K. P. & L. Co.; in that defendant D. S. & O. did not inspect or maintain such reclosers or fuses as had been installed in a careful and prudent manner, which was known or should have been known to the Kansas Power and Light Company; that the K. P. & L. Co. did not own or properly maintain at its substation, where power was furnished to D. S. & O., any fuses or reclosers, which would shut off the flow of electricity to D. S. & O., and in the exercise of the highest degree of care K. P. & L. Co. was obligated to install and properly maintain such fuses or reclosers; that K. P. & L. Co. constituted D. S. & O. its agent for the purpose of maintaining reclosers and fuses, and was responsible for the failure of D. S. & O. to carefully erect and maintain an automatic reclosing circuit breaker or its equivalent at its substation; that the pole which broke was not such a pole as should have been installed or used in connection with a transmission line carrying such a voltage of electricity because it was brittle and likely to break, which should have been known to defendants; and that defendants in the exercise of the highest degree of care should have known of the existence of the fault and the break of the pole and the short in the line within a few seconds after the pole was broken or after the line was energized and should, in the exercise of due care, have either repaired the break or shut off the electricity long before plaintiff was injured.

The petition then described plaintiff's injuries in the amount of $25,000. Judgment was prayed in that amount.

After motions to require plaintiff to make the petition more definite and certain were overruled, defendants demurred to it on the ground it did not state facts sufficient to constitute a cause of action. This demurrer was overruled. On appeal we affirmed. (See *Roehrman v. D. S. & O. Rural Electric Cooperative Ass'n*, 174 Kan. 498, 256 P. 2d 872.)

When the case was returned to the district court defendant, D. S. & O., answered. In this answer it first denied the allegations of the petition generally; then it alleged that Roehrman did not receive any compensation from the highway commission pursuant to the workmen's compensation statutes; that plaintiff's injuries did not

arise out of and in the course of his employment with the state highway commission; that the injuries of plaintiff were not injuries for which compensation was payable; that the highway commission was not a proper party to maintain the action for its benefit and for the benefit of plaintiff; that there had been no determination under the workmen's compensation act that Roehrman was injured by accident arising out of and in the course of his employment under the workmen's compensation act; that neither the highway commission nor plaintiff notified the compensation commission of plaintiff's injuries; that if plaintiff sustained any injuries they were caused by his own negligence because he knew that a pole carrying electric transmission wires had been broken but he failed to make any inspection to ascertain their location; he failed to remain in a place of safety on the highway but on the contrary walked off the highway to a field adjacent to the highway, where his accident occurred in the dark when he could not see what was in his path and thus came into contact with an electric transmission wire; that he failed to use his faculties of hearing and sight to avoid a place of danger; that he failed to heed a warning; that confronted with the darkness he should not have proceeded further without finding out that he could safely do so; he unnecessarily subjected himself to danger he should have anticipated and was negligent in doing so; that if plaintiff was acting in the scope of his employment he assumed any risk of injury from the accident and was barred from recovering damages; and that any injuries plaintiff sustained were the result of an unavoidable accident. Defendant, D. S. & O., admitted its own existence, that a pole broke about midnight and plaintiff came into contact with one of the wires. Defendant prayed judgment for costs. The reply was a general denial.

At the close of plaintiff's evidence defendant, D. S. & O., demurred to it on the ground it pleaded in its answer relative to the workmen's compensation act; that plaintiff's evidence demonstrated that plaintiff was guilty of contributory negligence; that there was no evidence of any negligence of that defendant; that no action by it was the proximate cause of any injuries the plaintiff sustained. This demurrer was overruled; the demurrer of the K. P. & L. Co. was sustained; D. S. & O. also demurred to the evidence of plaintiff because the trial court had no jurisdiction of defendant or the subject matter since no cause had been proven against the K. P. & L. Co.

The jury returned a verdict for plaintiff in the amount of $5,495. Special questions were answered as follows:

"1.—Did any of defendant's employees leave a recloser in such a condition that it could not kick out at Creamery Corner for 30 to 45 minutes?   A. 'No, not knowingly.'

"2.—State the date and time of day or night when the following events occurred:

"(A) The date and hour when the electricity was shut off and the lines were killed so defendant's employees could work on the line.   A. '11:00 P. M. August 19, 1949.'

"(B) The hour when the pole was broken by the automobile driven by the soldier.   A. '1:00 A. M. August 20, 1949.'

"(C) The hour when the plaintiff sustained his injury.   A. '3:45 A. M. to 4:00 A. M. August 20, 1949.'

"(D) The date and hour when the field phase or the Skiddy line was energized by turning an electrical current into it.   A. '3:30 to 3:40 A. M. August 20, 1949.'

"3.—With which electrical transmission wire did Mr. Roehrman come in contact, the road phase going to Wreford or the field phase to Skiddy?   A. 'Field phase to Skiddy.'

"4.—Did the plaintiff Arnold F. Roehrman know or should he have known that the wires at the scene of the accident were wires which carried electrical current?   A. 'Yes.'

"5.—When the plaintiff Arnold F. Roehrman walked into the field south of the wrecked automobile just before the accident, did he look for any wires which might be in the vicinity?   A. 'No. Had prior to walking into field.'

"6.—Was there anything to prevent the plaintiff Arnold F. Roehrman from seeing the wire with which he came in contact if he had looked and used the flashlight he was carrying?   A. 'No.'

"7.—Did the plaintiff Arnold F. Roehrman take any precautions for his own safety when he walked into the field before the accident, in the dark?   A. 'Some precaution.'

"8.—Was any injury the plaintiff sustained the result of an unavoidable accident?   A. 'No.'

"9.—Was the defendant D. S. & O. Rural Electric Cooperative Association, Inc., negligent, as that word is defined in the Court's instructions?   A. 'Yes.'

"10.—If your answer to Question No. 9 is 'Yes,' then state what that negligence was.   A. 'Failure to maintain reclosures properly.'

"11.—Did the defendant D. S. & O. have any actual or constructive notice or knowledge of the broken pole, or any results thereof causing a fault in the line, before he was injured?   A. 'No.'

"12.—If you answer the next preceding question 'Yes,' state how long prior to the injury of the plaintiff had such notice or knowledge been received by the defendant, D. S. & O.?   A. _____.

"13.—Were plaintiff's injuries proximately caused by any of the following:

"(A) Negligence of plaintiff Arnold F. Roehrman?   A. 'Yes.'

"(B)  Negligence of defendant D. S. & O.?   A. 'Yes.'

"14.—If your verdict is for the plaintiff Arnold F. Roehrman, then state how much you allow him for:

"(a) Personal injuries: '$5,000.00.'
"(b) Hospital bills: 'None.'
"(c) Medical bills: 'None.'
"(d) Loss of wages: '$495.00.' "

Plaintiff filed a motion for a new trial on the grounds of abuse of discretion by the court; misconduct of the jury; misconduct of the defendant; accident and surprise; plaintiff was not afforded a reasonable opportunity to present his evidence and be heard on the merits of the case; erroneous rulings of the court; erroneous instructions by the court; the verdict and findings were given under the influence of passion and prejudice; the verdict and special findings are in whole or in part contrary to the evidence; newly discovered evidence; erroneous refusal to sustain defendant's motion to discharge the jury and the defendant's exceptions to the court's instructions to the jury made after the jury had retired to consider this verdict and erroneous insistence that the jury return a verdict and that it answer each part of question No. 13 with a "Yes" or "No" answer; the attorney for the defendant in and as a part of his closing argument informed the jury that the plaintiff should recover from the state highway commission well knowing that the plaintiff under the law could not and cannot recover against the state highway commission.

The plaintiff filed a motion to set aside answers to special questions 5, 6, 11 and 13 (A) because they were not supported by the great weight of the evidence and were contrary to the evidence and the answers proved the jury answered these questions and special question No. 14 without giving consideration to the court's instructions as to the law of the case and in disregard of the court's instructions.

The defendant, D. S. & O. Rural Electric Cooperative Association, Inc., filed a motion to dismiss the action for lack of jurisdiction over D. S. & O. Rural Electric Cooperative Association, Inc., for lack of jurisdiction of the subject matter and because the action cannot be maintained by the state highway commission for the reasons stated in paragraphs 1, 2, 3, 4 and 5 of the answer of the defendant, D. S. & O. Rural Electric Cooperative Association, Inc. It also filed a motion for judgment on the special findings 4, 5, 6, 11 and 13 (A) notwithstanding the general verdict for plaintiff. The court in a memorandum opinion overruled the mo-

tion of plaintiff to set aside answers to special questions and also defendant D. S. & O.'s motion to dismiss the action for lack of jurisdiction of the subject matter and because the action could not be maintained by the state highway commission for the reasons stated in paragraphs 1, 2, 3, 4 and 5 of the answer of defendant, D. S. & O. Rural Electric Cooperative Association, Inc., and for judgment notwithstanding the verdict; and granted plaintiff's motion for a new trial.

The defendant, D. S. & O., appealed from that part of the judgment which determined adversely to it the questions of law raised in paragraphs 2, 3, 4, 5, 6 and 7 in its answer and the ruling that the action could be maintained by the state highway commission; from the order overruling the two separate demurrers to plaintiff's evidence; from the order overruling its demurrer on April 26, 1954 and its objections to the jurisdiction of the court and the capacity of plaintiff state highway commission to maintain this action; from the order granting plaintiff's motion for a new trial; and from the order denying the motion of defendant, D. S. & O. Rural Electric Cooperative Association, Inc., for judgment on special findings and to all other orders adverse to it.

The specifications of error were that the court erred in ruling adversely to the defendant on determining the questions of law in advance of trial of any issue of fact for the reasons argued and particularly because there were no proceedings whatsoever before the workmen's compensation commission; in overruling defendant's demurrer to plaintiff's evidence at the close of plaintiff's evidence for the reasons stated in the demurrer; in overruling the second demurrer of defendant for the reason that there was no jurisdiction to proceed when there was no cause of action proved against appellant's co-defendant, The Kansas Power and Light Company; in overruling defendant's motion for directed verdict, its demurrer and its motion to dismiss, all filed at the conclusion of all the evidence for the reasons there stated, and particularly since it was then apparent that plaintiff was negligent and his negligence caused and contributed to his injuries; that appellant was not negligent in any of the particulars alleged; that no negligence of appellant caused injury to plaintiff; that appellant had no notice of the breaking of the pole; and for other reasons set out in the motion and the argument; that the trial court erred in granting plaintiff a new trial on the theory that the jury did not understand the case because it re-

turned a general verdict for the plaintiff while the jury's special findings showed that the appellant was entitled to judgment.

Defendant D. S. & O. argues first, its demurrer to plaintiff's evidence should have been sustained because the state highway commission could not maintain the action against it under G. S. 1949, 44-504 since it had made no compliance with the duties imposed upon it by the workmen's compensation act.

The action was brought pursuant to G. S. 1949, 44-504. That act provides, in part, that where an injury has been caused by the negligence of a third party the injured workman shall have the right to take compensation under the act and pursue his or her remedy by proper action in a court of competent jurisdiction against such other person. The act goes on to provide for subrogation of the employer, for the amount paid; that the action if prosecuted by the workman must be begun in a year from the date of the injury; that failure to institute such an action in time by the workman shall operate as an assignment to the employer of any cause of action and such employer may enforce same in his own name or in the name of the workman for their benefit as their interests may appear by proper action in any court of competent jurisdiction. More than a year had elapsed since the injury—hence this action was brought by the employer for its benefit and that of the injured workman as their interests may appear. There is no question but that the cause of action was well pleaded. The gist of defendant's argument is that in order for the employer to be able to maintain the action it must comply with the terms of the act. Defendant then points out the proof showed the state highway commission had failed to make a report of the accident to the commissioner of workmen's compensation; to make a report of initial payment; failed to file any final receipt; and then to file a physician's report. The record in this case shows the workman was injured and the commission immediately began paying compensation. Defendant argues such was not enough and that a failure of the commission employer to make the reports above stated barred it from bringing this action. Defendant relies in the main on what we said in *Terrell v. Ready Mixed Concrete Co.*, 174 Kan. 633, 258 P. 2d 275. That case is not in point here. What it holds is that G. S. 1949, 44-504 provides its own statute of limitations. Such a point is not involved here. The statute provides an injured workman may take compensation from his employer and bring an action against the negligent third party. That is what em-

ployee and employer did in this case. Actually whether the employer complied with all the requirements of the act while paying compensation is of no concern to the negligent third party.

Defendant D. S. & O. next argues the trial court erred in overruling its demurrer to the plaintiff's evidence on the ground that it showed him to be guilty of contributory negligence sufficient to bar his recovery. The basis of this argument is that plaintiff came out to the scene of the injury, saw the pole knocked over, the automobile overturned in the field, the wires going over it, and knew they were electric wires. The argument is that knowing all this, he walked out into the field in the dark and came in contact with a live wire. Defendant relies in a large measure on what we said in *Kurre v. Graham Ship By Truck Co.*, 136 Kan. 356, 15 P. 2d 463. That was a case where a truck driver arrived at a crowded loading dock in the dark. He saw a light and heard a voice. In pursuing the voice he felt his way in the dark, fell and was injured. In holding him to be guilty of contributory negligence we said when he was confronted with darkness it was his duty under such circumstances to refrain from proceeding further without knowing where he might safely go. Defendant asks us to apply that rule to this highway maintenance man, called from his home in the night on account of an accident that left wires suspended over the highway so low as to present a hazard to traffic. When he arrived there he saw a pole broken off and an automobile overturned in a field. The question is whether plaintiff failed to exercise due care under all the surrounding facts and circumstances. ( See *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909. )

In *Lawrence v. Kansas Power & Light Co.*, 167 Kan. 45, 204 P. 2d 752, in dealing with a somewhat analogous situation we said:

"The legal questions here involved are so well settled in our law that they need not be labored. The actions were ones at common law in which plaintiffs sought damages alleged to have resulted from defendant's negligence, and defendant had pleaded contributory negligence of the plaintiffs. These are the kinds of actions in which each party is entitled to a trial by jury as a matter of right. They should not be converted into trials by the court. Negligence is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established. Before the court should make such a holding the evidence should be so clear that reasonable minds, considering it, could have but one opinion, namely, that the party was negligent. In these cases we think the contributory negligence of plaintiffs was clearly a question of fact for the jury."

Defendant D. S. & O. next argues that the trial court erred in overruling its demurrer to plaintiff's evidence because there was no evidence of defendant's negligence. At the outset it argues that since plaintiff was in the field when he was injured he was either a trespasser or a licensee and the only duty it owed him was to refrain from wilfully, intentionally or recklessly injuring him. That argument is not good. We will not hold that a highway employee charged with the duty of maintaining a highway so that it may be used safely is confined under circumstances such as these to operating on the right of way. Plaintiff was no trespasser when he went upon the land to investigate the automobile. (See 52 Am. Jur. 867; *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778.)

Defendant next argues that conceding plaintiff was not a trespasser or licensee, still there was no evidence of its negligence. Under this head defendant asks us to examine a great mass of circumstances and reach a different conclusion on that factual question than was reached by the trial court and the jury by its answer to questions 9 and 10. Plaintiff presents a considerable mass of circumstances to maintain its conclusion that reasonable minds might differ. One of the duties of the trier of facts is to indulge reasonable presumptions and draw reasonable inferences. In this case these reasonable inferences and reasonable presumptions must be drawn in favor of the plaintiff. Besides that there was a direct conflict of evidence on the question of whether and for how long a time there had been electric current in the wire with which plaintiff came in contact. No good purpose would be served by setting out all the evidence in this case in detail here. Suffice it to say there was sufficient evidence on both sides that reasonable minds might differ.

Defendant next argues the trial court erred in overruling its demurrer to plaintiff's evidence and its motion for directed verdict at the close of the evidence. What has been already said disposes of this argument.

Defendant next argues the trial court erred in overruling its motion for judgment notwithstanding the general verdict. Defendant bases this argument on the answers to questions 5, 6, 11 and 13. This argument must be considered in connection with the next one that the trial court erred in granting a new trial to plaintiff on the theory that the jury did not understand the case when it returned a general verdict for plaintiff but the special finding showed

that the defendant was entitled to judgment notwithstanding the general verdict. In the first place, the trial court granted the new trial not only upon the theory that the answers and the general verdict could not be reconciled. The trial court expressed dissatisfaction with the verdict generally. Under such circumstances we will not disturb the trial court's decision. (See *Bishop v. Huffman,* 175 Kan. 270, 262 P. 2d 948.) It follows we will not consider the answers to special questions. The new trial was granted on all the issues.

The judgment of the trial court is affirmed.

THIELE, J., concurs in the result.

PRICE, J., dissenting: The special findings of the jury are that both plaintiff and defendant were guilty of negligence which proximately caused plaintiff's injuries. The special findings are not inconsistent with each other and are complete in themselves, but are inconsistent with the general verdict. Assuming, solely for the sake of argument, that defendant's demurrer to the evidence was properly overruled, in my opinion defendant is entitled to judgment on the special findings notwithstanding the general verdict. (*Ferguson v. Kansas City Public Service Co.,* 159 Kan. 520, 534, 156 P. 2d 869; *Fralick v. Kansas City Public Ser. Co.,* 168 Kan. 134, 211 P. 2d 443; *Metzinger v. Subera,* 175 Kan. 542, 266 P. 2d 287, and *Franklin v. Kansas City Public Service Co.,* 175 Kan. 626, 265 P. 2d 1031.)