FRANCES F. LUTOLF, administratrix, *vs.* UNITED ELECTRIC
                    LIGHT COMPANY.

            Hampden.     April 3, 1903. — June 19, 1903.   ·

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

   *Electric Light Company.   Negligence.   Pleading, Civil.   Practice, Civil.*

In an action against a corporation operating an electric light plant for causing the
   death of the plaintiff's intestate, it is evidence of negligence on the part of the
   corporation itself, that under its system of inspection it was the duty of no one
   to make a thorough examination oftener than once in nine days of each lamp
   fed by a wire carrying a dangerous electric current, and that the examinations
   once in nine days were made only in connection with the manual work of clean-
   ing globes and renewing carbons, although twice each night inspectors drove
   past to see that the lamps were in working order.
In an action against a corporation operating an electric light plant for causing the
   death of the plaintiff's intestate, an allegation in the declaration that the defend-
   ant negligently suffered its wires to be out of repair, is sufficient to raise the
   issue of a proper method of inspection.
In an action against a corporation operating an electric light plant for causing the
   death of the plaintiff's intestate, there was evidence, that nearly an hour before
   the plaintiff's intestate was killed by an electric shock received near a pole of the
   defendant, a servant of the defendant at its power house had received messages
   by telephone that the pole was on fire and that a wire was down there, and in-
   stead of causing the current to be shut off, which would have prevented the
   fatality, ordered an inspector to go to the place, and that the inspector might
   have arrived in from five to eight minutes, but that more than half an hour

elapsed before the accident and the inspector did not arrive until after it had occurred. *Held*, that the jury properly could find gross negligence on the part of the servant at the power house in not ordering the current to be turned off and also gross negligence on the part of the inspector in not arriving at the place of the accident within a reasonable time.

If the judge who tried a case dies while a motion for a new trial is pending and the party making the motion proceeds with it before another judge, he cannot after a denial of his motion take the ground that the judge had no power to deny it.

TORT, under St. 1897, c. 416, and St. 1898, c. 565, (R. L. c. 171, § 2,) by the administratrix of the estate of Frederick W. Lutolf, late of Springfield, for the death of her intestate alleged to have been caused by the negligence of the defendant and the gross negligence of the defendant's servants and agents. Writ dated September 10, 1901.

At the trial in the Superior Court before *Hopkins*, J., it appeared that the death of the plaintiff's intestate occurred on the evening of June 12, 1901, from an electric shock received near an electric light pole of the defendant on the south side of High Street in Springfield under the circumstances stated by the court, while the plaintiff's intestate was passing from his house on the south side of High Street in order to go to a hen-coop which he maintained on the north side of the same street beyond the pole. He was a coachman and had no knowledge of electricity.

The defendant's seven requests for rulings referred to by the court were as follows:

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. There is no evidence that the defendant was negligent.

"3. There is no evidence of gross negligence or carelessness of any servant of the defendant.

"4. There is no sufficient evidence that the plaintiff's intestate was exercising due diligence at the time of his death.

"5. There is no evidence that it was any part of the duty of the plaintiff's intestate or that he was under any obligation to examine into the condition of the pole, but on the contrary he voluntarily exposed himself to danger of which he had been amply warned and which he had full opportunity to avoid, and the plaintiff cannot recover.

"6. Upon all the evidence in the case, the plaintiff's intestate

having been warned to keep away from the pole and having persisted in approaching and examining it such act on his part was negligent whether he knew the precise nature of the danger or not, and contributed to the injury, and the plaintiff cannot recover.

"7. Under the pleadings no liability can be attributed to the defendant by reason of any alleged defective or improper method of inspection."

The judge refused to make the rulings requested.

The jury returned a verdict for the plaintiff in the sum of $2,500. The defendant filed a motion for a new trial on the grounds that the verdict was against the evidence and the weight of evidence, and that the damages awarded were excessive. *Hopkins*, J. died while this motion was pending, and later the motion was heard and denied by *Fox*, J. The last named judge allowed the defendant's exceptions in the form stated by the court.

*W. S. Robinson*, for the defendant.

*J. B. Carroll & W. H. McClintock*, for the plaintiff.

BARKER, J. The action is a statutory one for causing the death of the plaintiff's husband. The briefs of both parties assume that he was killed while upon the sidewalk of a public street and by means of an electric shock received when he was near an electric light pole which supported a lighted street lamp, and at a time when the current which fed the lamp was causing abnormal manifestations upon the pole and the apparatus attached to it.

The exceptions taken at the jury trial are to the refusal to give seven requests and to " the instructions given not in harmony with said requests." The bill sets out over sixteen pages of the charge, and has no statement of any specific objection to any instruction contained in it. The first request was that upon all the evidence the plaintiff was not entitled to recover. The second, third and seventh were addressed to the question of the defendant's negligence or that of the gross negligence of its servants. The fourth, fifth and sixth related to the question of the due care or negligence of the person killed.

After the verdict the defendant filed a motion for a new trial because the verdict was against the evidence and the weight of

the evidence, and because the damages were excessive. After the filing of the motion the judge who presided at the trial died, and the motion having been heard and overruled by another judge the defendant excepted to the disallowance of the motion by that judge.

No argument outside of those addressed to the exceptions to the refusal to give the other requests has been made in support of the exception to the refusal to give the first request, and we overrule that exception for the reasons to be stated in connection with our decision as to the exceptions to the other requests. Upon the question of negligence upon the part of the defendant corporation itself, as distinguished from that of its servants or employees, the evidence tended to show that the pole and its appliances had been installed for three years or more and were part of one circuit of street lamps in a system of such circuits by means of which the defendant lighted the streets of Springfield. That these street lamps were fed by electricity distributed sometimes from the defendant's power house in the city and sometimes from a mill at Indian Orchard. That when the lamps were giving light the parts of the system in the streets carried a dangerous electric current. That defects in insulation of wires or defects in the poles or other parts of the apparatus in the streets might make the defendant's structures in the streets dangerous to persons who might be there. That the defendant employed men who twice every night drove past each street lamp and while so passing looked to see whether the lamp was burning properly, and if so passed on without stopping, and that one of these men had so driven past the place of the accident on the previous night and had then observed nothing unusual or out of the regular order. That the defendant also employed another set of men called trimmers who went to each lamp once in nine days, lowered the lamp, cleaned the globes and renewed the carbons and replaced the lamps, and that it was the duty of these men at the same time to look things over and see that there was nothing out of the way with the lamp or its apparatus or connections; and that the trimmer of the circuit in which was this lamp had visited it and trimmed it on. the eighth day before the accident, and that he had then made the examination which it was his duty to make, and that then

there was nothing out of the way so far as he could observe. That when the current was turned on to this circuit on the evening of the accident the lamp began to act abnormally, and that from that time until the current was turned off at the Indian Orchard power house at 9.15 P. M. the lamp continued to act abnormally, and that parts of the apparatus were burned and there were manifestations of the presence of electricity at the pole and at different parts of the connections between the pole and the lamp.

Whether the jury should have been instructed that there was no evidence of negligence on the part of the corporation itself turns upon the question whether the system of inspection was all that due care required of it under the circumstances. Under it no one had a duty of making a thorough examination, even by the eye, of the lamp and its connections oftener than once in nine days, and all such examinations were made in connection with the manual work of cleaning globes and renewing carbons. The visits twice each night of the inspectors who drove past showed simply that the lamp was in working order at that time and had no tendency toward ascertaining the presence of circumstances which might then be present and which at any moment might make the apparatus dangerous. Electric wires exposed in the open air to the action of the elements and all the apparatus of the pole and lamp as they grow older have an increasing tendency to become defective, while the destructive agency which they carry remains active.

Under such a condition of things the care which a corporation having a lighting plant extended throughout a city should exercise in the oversight of its apparatus with a view promptly to discover defects giving rise to the greatest danger is one which is peculiarly proper for the determination of a jury of the vicinage. In our opinion it was proper in this instance to submit it to the jury, and certainly in our view it would have been wrong to rule as matter of law that there was no evidence of negligence in this respect on the part of the defendant itself.

The seventh request was that under the pleadings no liability could be attributed to the defendant by reason of any alleged defective or improper method of inspection. We think the allegation that the defendant negligently and carelessly suffered

and permitted its wires to be out of repair was enough to raise the question of a proper method of inspection.

Upon the circumstances bearing upon the question of gross negligence of the defendant's servants there was much conflicting testimony, especially as to the time when different things occurred.

On the part of the defendant there was testimony that the current was turned on to the circuit at 7.51 P. M. On the part of the plaintiff there was testimony that it was turned on before dark, which would have been still earlier. Evidence on the part of the defendant tended to show that the deceased received the shock very soon after 8.P. M., and on the part of the plaintiff that the shock was received after half past eight and but little before nine o'clock. Before the fatality word was sent to a fire engine station, telephone messages were sent to the defendant's city power station, a fireman visited the scene and tried to put out the fire on the post with an extinguisher. The deceased was not in the street until shortly before he was hurt and the time of his appearance and of the other circumstances mentioned and of other occurrences more or less material was given differently by different witnesses.

It would have been competent for the jury to find from the evidence that before eight o'clock a servant of the defendant at its city power house, who had the means and the authority to cause the current to be instantly shut off from the circuit in which was the lamp, had received two separate telephonic messages, one informing him that the pole was on fire and the second one that a wire was down there.

They could also find that if in response to the information so received this servant had then caused the current to be shut off from the circuit no accident would have happened and that he could have caused the current to be shut off simply by telephoning to the man in charge at the Indian Orchard power house, and that all that he did toward putting an end to the dangerous condition of things was to order an inspector to go to the place.

The testimony also tended to show that it ordinarily would take from five to eight minutes to go from the place where the inspector was when sent to the place of the accident and would

have justified a finding that half an hour or more elapsed between the time when the inspector was sent out and the time when the deceased received the fatal shock, and that the inspector did not arrive upon the spot until after the deceased had been injured.

In our opinion the jury properly could find that there was gross negligence on the part of the servant of the defendant at the power house in not ordering the current to be turned off when he received the telephonic messages and on the part of the inspector in not arriving at the scene of the accident in a reasonable time after receiving the order to go thither.

The other requests which were refused relate to the question of due care on the part of the plaintiff's intestate. While the evidence as to his conduct immediately before he received the fatal shock was conflicting, there was evidence which would have justified a finding that he had occasion to pass over the sidewalk which passed next to the electric light pole, and that while upon the sidewalk for that purpose and near the pole and without touching or attempting to touch it he received the fatal shock. We think that in view of this evidence neither of the three rulings requested upon this branch of the case properly could have been given. The rulings given upon this branch of the case seem to us to have been sufficiently favorable to the defendant.

The remaining exception is to the disallowance of the motion for a new trial. So far as appears the defendant voluntarily proceeded after the death of the judge who presided at the trial to have the motion heard by another judge. For this reason the defendant cannot be heard to say that the judge who heard the motion could not deny it.

*Exceptions overruled.*