## GIBSON COUNTY ELECTRIC MEMBERSHIP CORPORATION v. HALL.—222 S. W. (2d) 689.

Western Section. May 30, 1947.

Petition for Certiorari denied by Supreme Court, October 3, 1947.

J. Frank Warmath, of Humboldt, Sam C. Nailling, of Union City, for plaintiff in error.

Miles & Miles, of Union City, Harvey R. Teague, of Ridgely, for defendant in error.

ANDERSON, P. J. This is an action for damages for personal injuries sustained by the defendant-in-error, Rufus G. Hall, when he came in contact with an electrically charged wire maintained by the plaintiff-in-error, Electric Membership Corporation. The trial resulted in a verdict and judgment in favor of the defendant-in-error. The damages were fixed at $10,000.00. The case is here upon an appeal in error by the Corporation.

For convenience, the parties will hereinafter be referred to as of their status in the trial court: Hall as the plaintiff and the Corporation as the defendant.

Among other pleas, the defendant filed one of accord and satisfaction. To this the plaintiff filed a replication, a portion of which the defendant moved to strike. This motion was overruled. Error is assigned upon that action. In his replication, the plaintiff first denies that there was any bona fide accord and satisfaction and then sets out in detail the circumstances relied upon to show the defendant's lack of good faith in the transaction relied upon. The defendant's motion to strike goes to the latter part of the replication.

It is contended that the replication is couched in a conditional manner and that this is not permissible; that if a pleader seeks to avoid the legal effect of something advanced by his adversary, he must expressly or impliedly confess the averment to be true and then set out the reasons why the instrument or state of facts expressly or implied admitted will not be an obstruction to the recognition of his right as plaintiff or defendant, as the case may be; citing Tennessee Procedure in Law Cases, Sec. 765.

It seems to us that this is exactly what the plaintiff did in his replication. It denies that there was any

bona fide accord and satisfaction, and proceeds to set out in detail the circumstances showing that the transaction relied upon by the defendant was not a bona fide one. In other words, the denial was not of the transaction but of the bona fides thereof.

It is insisted that in any event the attack upon the accord and satisfaction for fraud presented an equitable issue, triable only in a court of chancery. The contrary has been held a number of times. Memphis Street Railway Co. v. Giardino, 116 Tenn. 368, 92 S. W. 855, 8 Ann. Cas. 176; Brundige v. Nashville, Chattanooga & St. Louis R. Co., 112 Tenn., 526, 527, 81 S. W. 1248.

It is contended that plaintiff is barred by laches from attacking the settlement alleged to have been made with the defendant, in that he retained the money, $399.50, received by him and did not tender it back as soon as the fraud was discovered. The plaintiff tendered the amount received with his replication to the plea of accord and satisfaction, paying the same into the hands of the clerk of the circuit court subject to the defendant's demand. This was a seasonable tender. Memphis Street Railway Co. v. Giardino, supra; Glover v. Louisville & N. R. Co., 163 Tenn. 85, 40 S. W. (2d) 1031.

The principal contention is that the motion for a directed verdict made at the conclusion of all the evidence should have been sustained. There is no controversy about the degree of care required of one maintaining wires for the distribution of electricity. Due to the deadly character of the commodity, the rule has been variously stated. A short form is that while a company so engaged is not liable as an insurer; it is held to "the highest degree of care which skill and foresight can obtain, consistent with the practical conduct of busi-

ness''. 29 C. J. S., Electricity, Section 39, page 576. Our own cases are in accord with this statement of the rule. Memphis St. R. Co. v. Kartright, 110 Tenn. 277, 75 S. W. 719, 100 Am. St. Rep. 807; Osborne v. Tennessee Electric Power Co., 158 Tenn. 278, 12 S. W. (2d) 947.

The jury found that the defendant was guilty of a breach of duty which was a proximate cause of the plaintiff's injuries. The first question is whether this finding has the requisite support of the evidence.

It appears that about daybreak on October 7, 1944, the plaintiff was walking along a public road between the communities of Cash Town and Gratio, when one of defendant's transmission lines fell upon him. As a result, he was severly burned.

The plaintiff testified that the wire ''was blowed over an oak tree'', and burned through some limbs before falling on him; that his attention being first attracted by the falling of one of the limbs, he stopped and turned to see what had happened, and when he started forward again, he ''spied the line coming'' toward him; that it struck his right arm which he had thrown up to ward it off and when it did so it ''caught hold of him'' and he could not turn it loose. The throes of the plaintiff were described by an eye witness who corroborated him in other respects. The witness said that when the wire came in contact with the plaintiff's hands it ''looked like he caught fire''.

It is contended that the undisputed evidence on behalf of the defendant completely refuted any inference of negligence arising under the doctrine of res ipsa loquitur and required that a verdict be directed in its favor. The defendant relies upon the assertion by Mr. Justice Prewitt in Susman v. Mid-South Fair, 180 Tenn. 471, 176

S. W. (2d) 804, 805, that "this doctrine (res ipsa loqui-
tur) should be applied only where the circumstances leave
no room for different inferences." The theory of the
defense was that the defendant's lines were constructed
according to the highest safety standards and maintained
according to standard practices pursued by concerns in
the same business. It offered evidence to this effect and
it now insists that since this evidence was uncontradicted
"the only reasonable inference of how this accident
happened is that the line was knocked off the pole and
down to the ground by reason of a lightning storm that
took place in the early morning before the accident".
Expert evidence in the form of answers to hypothetical
questions was introduced tending to establish this view.

 It would serve no useful purpose to discuss the
several objections which under the facts in this case we
deem fatal to the defendant's contention. With refer-
ence to the supporting expert evidence, it is sufficient to
say it postulated that there was in fact such a storm
in the vicinity as that referred to. Opinions so based
could not be accepted as establishing as a matter of law
that the fall of the line was due to the storm for the rea-
son, among others equally good, that the evidence was
conflicting as to whether there was in fact such an event.

But without implying that we think the defendant's
evidence otherwise sufficient to render unavailable the
doctrine of res ipsa loquitur, we do not think that the
plaintiff's case depended solely on that legal device in
its primary meaning.

 The evidence made available another rule which
has been expressed by the Supreme Court as follows:

"Where, in addition to the facts which constitute the
res in its distinctive sense, that is the infliction of the

injury, and the physical agency inflicting it, there appear other facts which in and of themselves point to the responsible human cause, a case of circumstantial evidence is produced rather than a pure case res ipsa loquitur. However, in considering these additional circumstances the inference to be drawn from the res as above defined still operates in connection with the additional facts.''

North Memphis Sav. Bank v. Union Bridge & Construction Co., 138 Tenn. 161, 182, 183, 196 S. W. 492, 497.

Here, the aditional evidence tending to fasten responsibility upon the defendant was elicited from its manager on cross-examination. It appeared that there was a safety device, consisting of a fuse, located on the line four or five miles east of the scene of the accident, designed to ''blow out'' ''when the line was down'' and ''comes in contact with any solid earth or something like that, other than a person's body'', with the result that the line would be de-energized and thus rendered harmless.

After so testifying, the defendant's manager on cross-examination stated that whether the safety device did work upon the line's coming into contact with the limb of a tree depended upon the size of the limb; that if the limb ''was as big as your finger it possibly wouldn't (work)''; but that if it ''was as big as your arm it would (work)''; that in the present instance if in falling the line struck two limbs ''as big as your arm and one a little smaller'', that contact ''would . . . be likely to blow the fuse'', but that ''apparently it didn't (blow the fuse) until Mr. Hall got into it.''

By the undisputed evidence consisting of the testimony of two or three witnesses it was shown that of the three

limbs burned by the falling wire, one was three inches in diameter, one was two to two and a half, and one about one inch.

From these facts and other circumstances in the case the jury were warranted in finding either that the safety device did not measure up to the standard fixed by the degree of care exacted of the defendant in the operation and maintenance of its line, or that if the device were intrinsically sufficient, it was not in good order at the time of the accident.

It is also contended, but not very strongly, that the plaintiff was guilty of proximate contributory negligence as a matter of law. This view we likewise hold to be untenable. It appears from the undisputed evidence that the plaintiff did not see the wire in time to avoid it. Whether in the exercise of ordinary care he should have done so, was a question for the jury. It has been so held upon a state of facts more favorable to a defendant. Brunell v. Mountain States Power Co., 9 Cir., 81 F. (2d) 305.

This brings us to deal with the question of accord and satisfaction. The issue raised by the plaintiff's replication to the defendant's plea was submitted to the jury, but it is contended that the verdict in respect thereto is unsupported and on that account the motion for peremptory instructions should have been sustained. From the pertinent facts it is not difficult to understand why this contention is but lightly pressed. Considering, as we must, only the evidence favorable to the plaintiff, the jury were justified in finding the facts to be as follows: Plaintiff is an ignorant, simple-minded man, below the average of intelligence. This is obvious to anyone talking with him. Six days after the accident and before

his arm was amputated, an adjuster for the defendant was admitted by the hospital authorities to see the plaintiff. At that time, he was in great pain and agony. The adjuster ingratiated himself with the plaintiff by pretending to be sympathetic with him and hostile toward the defendant, telling the plaintiff to "sue the corporation", to which the plaintiff replied, "That is what I am going to do". He wrote for the plaintiff what the latter understood to be a "nice letter" to the defendant about plaintiff's situation and had plaintiff to sign it by touching the pen or pencil. About a week later the adjuster returned to the hospital and again interviewed the plaintiff. He advised him that he had no case against the company and inquired if he needed any money. The plaintiff replied that he was "broke". Whereupon the adjuster said, "I am going to let you have a hundred dollars," and laid that sum upon the plaintiff's bed and left it there. On the same occasion, without plaintiff's knowledge or authority, the adjuster paid his doctor's bill and also the hospital bill amounting to $299.50. Plaintiff testified that he did not sign the release offered in evidence, which purports to have been signed by him by his mark.

That these facts justified the jury's findings against the defendant on the plea of accord and satisfaction needs no elaboration. In trying such an issue, the circuit court was proceeding as a court of equity and all other questions aside, the consideration paid plaintiff for the alleged settlement was so grossly inadequate as to shock the conscience of the court, particularly when considered in connection with the outrageous circumstances under which it was done.

It is next contended that the court should have charged the jury the special request dealing with proxi-

mate cause. The failure to charge this request is made the subject of the 13th assignment of error. It was not error to refuse the request for the reason among others that the law was correctly given in the general charge.

The same thing is true with respect to a special request made the basis of the 14th assignment of error and dealing with contributory negligence.

The fifteenth assignment of error is based upon a special request for a charge to the effect that where the doctrine of res ipsa loquitur applies, the burden of proof on the issue of negligence is not thereby shifted from the plaintiff to the defendant. The judge declined to give this charge and in doing so, he committed no error. The function of the rule of res ipsa loquitur is in the main to enable the judge to determine whether the evidence entitles the plaintiff to go to the jury. If he be of the opinion that the circumstances immediately attending the injury warrant an inference of negligence on the part of the defendant, then, nothing else appearing, he should submit the case to the jury who may or may not draw the inference as their judgment may dictate. North Memphis Savings Bank v. Union Bridge & Construction Co., supra, 138 Tenn. 161, 188, 196 S. W. 492. In the present case, the judge did not charge the doctrine of res ipsa loquitur, but he did specifically and correctly charge the law with respect to the burden of proof. No more was required upon that aspect of the case.

The 16th assignment of error challenges the action of the court in declining to give a special request, which need not be set out. Its evidentiary basis seems to be that the plaintiff waited until he filed his replication to the plea of accord and satisfaction to tender the sum received by him from the defendant, it being con-

tended that this was too late, and as a result the plaintiff was estopped to attack the settlement. We have already disposed of this contention by what is hereinabove said.

As there indicated, it has been expressly held in this state that where an accord and satisfaction is relied on and a fraud in obtaining it is set up by replication, tender should be made when the replication repudiating the settlement is filed. Memphis Street Railway Co. v. Giardino, 116 Tenn. 368, 92 S. W. 855, 8 Ann. Cas. 176; Glover v. Louisville & N. R. Co., 163 Tenn. 85, 40 S. W. (2d) 1031. That is what was done in this case. The special request was therefore not a correct statement of the law applicable to the facts.

Finally, it is very earnestly insisted that the judgment is excessive. The plaintiff is 59 years old, and his occupation is that of a farm laborer earning from $2.00 to $2.50 a day. Neither side offered any medical testimony except incidentally, with respect to the nature and extent of the injuries and we are obliged to be content with the testimony of the plaintiff himself. That the injuries were permanent and severe and the pain excruciating, cannot be doubted. The plaintiff was still suffering at the time this case was tried about two years after the accident. An eye witness testified that when the plaintiff came into contact with the wire "it looked like he caught fire". Upon his arrival at the hospital it was found that his arm from the elbow down was "just burned black". After he had been there about a week the limb was amputated.

Plaintiff was also severely burned on the feet, on the left arm and the left hip. He testified that he was obliged to sit on his "right hip pretty well all the time"; that as a result of the burns on the bottom of his feet

they were still sore and pained him so much that his ability to stand for any length of time was impaired. He remained in the hospital about 30 days and was thereafter confined to his bed at a sister's home for a period of three weeks. He had not been able to work since the accident.

As already said, it is obvious from his examination that the plaintiff is of a low order of intelligence and had difficulty in describing his injuries. Apparently for this reason, he was asked to retire, disrobe, and clothe himself in a bathrobe so that the injuries on his body could be readily shown to the jury. This he did, and the record recites that so clad "the witness returned to the court room and exhibited his injuries to the jury".

The defendant introduced Dr. Banks, who attended the plaintiff after he reached the hospital. Dr. Banks was examined primarily about the alleged execution of the release which the defendant claims the plaintiff signed in connection with the accord and satisfaction, and plaintiff's competency to make a settlement of that kind. He gave incidentally a brief statement as to the plaintiff's injuries. As far as he went he corroborated the plaintiff. From the fact that the defendant did not see fit to examine the doctor further upon this phase of the matter, it is to be inferred that had it done so his testimony would have been unfavorable. The significance of this is not to be overlooked.

The defendant cites a number of cases where smaller amounts were fixed as damages in similar cases. Upon the other hand, the plaintiff cites an equal number where substantially similar amounts were allowed. No rule has been formulated by which to determine with certainty the damages to which a plaintiff in a case of

this kind is entitled. As has been said a number of times, ''The amount of the verdict is primarily for the jury to determine, and next to the jury the most competent person to pass upon the matter is the judge who presided at the trial and heard the evidence.'' Reeves v. Catignani, 157 Tenn. 173, 7 S. W. (2d) 38, 39. In the same case it is also pointed out that the right to revise even the amount of the verdict by the process of suggesting a remittitur is a delicate one and one which the courts should be slow to adopt.

Measured by the number of dollars, it may be conceded that the verdict appears to be a large one, but it shrinks considerably if the current purchasing power of the dollar be considered. Cf. Power Packing Co. v. Borum, 8 Tenn. App. 162, 182; 15 Am. Jur. 481, Section 71; Id., 621, Section 204. However this may be, we do not feel justified in substituting our judgment for that of the jury and the trial judge, especially since they had an opportunity, denied us, to observe on the plaintiff's body the nature and extent of the injuries as reflected thereby.

The argument in the brief is devoted primarily to the plaintiff's loss of earning capacity. It omits to take into consideration that the plaintiff was entitled to compensation for the pain and suffering. It is hard to conceive of a more excruciating experience than that which he suffered.

As a general rule we do not think we ought to disturb the amount of a verdict returned by a jury of fair-minded men and approved by a fair-minded judge unless it appear to a moral certainty to be so far beyond reason that to let it stand would be a palpable injustice.

There are some other assignments of error but they are either based on matter outside the present

record or are unsupported by a brief and argument and may be presumed to have been abandoned. Ward v. Gulf, M. & N. R. Co., 23 Tenn. App. 533, 550, 134 S. W. (2d) 917, and cases cited.

The result is that the judgment is affirmed at the cost of the defendant.

Baptist and Hamner, JJ., concur.