Nason Leroy GODDARD by Next Friend
Dorothy JoAnn Goddard, Appellant,

v.

ST. JOSEPH LIGHT AND POWER COMPA-
NY, a Corporation, and City of St. Joseph,
Missouri, a Municipal Corporation, Re-
spondents.

No. 49966.

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

Randolph & Randolph, by Robert B.
Randolph, St. Joseph, for appellant.

James O. Turner, Edward P. Speiser,
Richard W. Mason, Jr., St. Joseph, for re-
spondent, City of St. Joseph, Mo.

Sprague, Wilcox & Houts, St. Joseph,
for respondent St. Joseph Light & Power
Co.

WELBORN, Commissioner.

This is an action for $50,000 damages,
brought on behalf of Nason Leroy Goddard,
a minor, by his mother as next friend,
against the St. Joseph Light and Power
Company and the City of St. Joseph, for
personal injuries alleged to have been sus-
tained by Nason as the result of negligence
of the defendants in the construction and
maintenance of an electrical distribution
system and an electrical street lighting sys-
tem in St. Joseph. Upon a trial in the
Buchanan County Circuit Court, the jury
could not agree. Thereafter, the trial court
sustained the defendants' motions for judg-
ment in accordance with their motions for
directed verdict. Plaintiff has appealed
from the judgment so entered.

■ The sole question presented on this
appeal is whether or not plaintiff made a
submissible case in the trial court. In deter-
mining this question, we view the evidence
in the light most favorable to plaintiff, giv-
ing the plaintiff the benefit of all favorable
inferences arising therefrom and disregard-

ing defendants' evidence, except insofar as it might assist the plaintiff. Erbes v. Union Electric Company, Mo.Sup., 353 S.W.2d 659, 663(1).

This litigation arose out of an occurrence on the afternoon of Sunday, February 12, 1961, in the 300 block of Smith Street, between Moose and Elk Streets, in the City of St. Joseph. The defendant St. Joseph Light and Power Company (hereinafter referred to as Power Company) supplied electricity to users in St. Joseph. It maintained poles on the east side of Smith Street, which ran generally north and south. One pole, near an alley, was some 33.2 feet in height. Atop the pole were two wooden cross arms, running generally in an east and west direction. The upper arm carried on insulators near its west end at approximately the height of the pole, a 7200 volt primary line of the Power Company. The second cross arm was approximately two feet below the upper. Attached to insulators near the east end of this arm was a line of the St. Joseph city street lighting system. There was also a transformer on the pole, connected to the 7200 volt line. Below the transformer and some 5.8 feet below the lower cross arm were secondary wires of the Power Company, carrying 120 and 240 volts.

The next Power Company pole to the north on Smith Street was approximately 108 feet from the pole near the alley. It was 29.2 feet high, and had a single cross arm, to which the 7200 volt line, running approximately parallel with Smith Street, was attached at a level nearly equal to the top of the pole.

The city street light line ran northwesterly from the pole near the alley, across Smith Street at an angle, to a city pole on the west side of the street, a distance of approximately 150 feet. There it was attached to the pole at a height of approximately 24.4 feet above the ground.

To permit the street light wire to cross Smith Street, it passed beneath the 7200 volt line of the Power Company at a point approximately 18 feet north of the pole at the alley. A witness for the plaintiff estimated the vertical distance between the 7200 volt line and the street light line at the point of intersection as about a foot and a half or two feet.

The date of the erection of the 7200 volt line does not appear. However, the wire had been insulated, but on the day in question, the insulation was rotted off and there was very little insulation left on it. There was evidence that, in the five preceding years, the 7200 volt line had broken on three or four occasions at locations 100 feet on either side of the pole at the alley.

The city street light line had been erected pursuant to a 1955 agreement between the city and the Power Company, under which the city was given permission generally to use the Power Company poles in its street lighting system. The street light wire was an uninsulated aluminum wire. At the time here involved, the 7200 volt line was energized, but the street light line was not, as the accident occurred during daylight hours.

A house, numbered 306 Smith Street, was on the west side of that street, between Elk and Moose Streets. In front of the house and some 18 feet from the traveled portion of Smith Street, which was 22 feet wide, was a large maple tree, some 60 feet in height. On the day in question, Ernest Helton, the owner of the house, decided to trim some limbs from the maple tree. His trimming technique involved partially cutting limbs on the tree and then pulling them off the tree by means of a wire cable attached at one end to the limb and at the other to a tractor which Helton operated on Smith Street. Helton was assisted by Bennie Weiser, who cut the limbs before Helton pulled them with the tractor, and by his son.

Nason Leroy Goddard, 12 years of age at the time, lived on Elk Street. Attracted by the tree trimming activity, he and a

friend, David Fraser, sat down on the east side of Smith Street, on a grassy area between a ditch along the street and a sidewalk, and some 6 to 8 feet north of the Power Company pole near the alley.

Helton attached the cable to a limb in the maple tree. The limb was some 8 inches in diameter at its butt, 34 to 35 feet above the ground, and was some 12 feet in length and extended in a southeasterly direction from the tree. Witnesses described it as the biggest limb of the tree which extended over Smith Street. Helton stated that it did not extend over the street light wire, which was approximately 36 feet east of the base of the tree. He said: "Standing on the ground and looking up, (the limb) looked like it was five or six feet from the City light wire."

When Helton pulled on the limb with the tractor, it broke loose from the tree. The limb struck the street light wire which then came in contact with the 7200 volt Power Company line. An arc occurred and both lines were severed. The 7200 volt line fell to the ground and struck Nason, sitting on the ground, causing serious burns. This occurred within five minutes after Nason had sat down.

The limb fell in Smith Street and was "within six to eight feet of reaching the other side." The broken street light wire lay beneath the limb on the ground. No one witnessed the movement of the street light wire upon its being struck by the limb. Helton testified, without objection, that he had "no doubt" that the street light wire and the 7200 volt line came in contact and shorted out. A plaintiff's witness who was an electrician demonstrated to the jury the result of contact between wires in a situation such as the defendants' lines. The contact caused the high voltage line to burn in two immediately. According to this witness, proper insulation of either or both the 7200 volt line and the street light wire would have eliminated the arcing.

The case was tried on a petition which named the Power Company, the city and Helton as defendants. However, plaintiff dismissed as to Helton at the close of the plaintiff's case. As to the Power Company, the petition charged that, in the exercise of the highest degree of care, it should have known that the insulation was worn off its 7200 volt line so that it was incapable of preventing conducting of the high voltage electricity in that line to the street light wire; that the Power Company should have known that by giving the city permission to construct its street light line diagonally across Smith Street and attach the wire to its pole so that it came in close proximity to the 7200 volt line, high voltage electricity would escape from the uninsulated 7200 volt line by its coming in contact with the street light line and cause the power line to be shorted or grounded. The Power Company was charged with negligence in failing to post warning signs, in failing to erect guards to prevent contact between the 7200 volt line and the street light wire, and in failing to isolate the 7200 volt line.

The negligence charged against the city was in construction and maintenance of its street light wire in close proximity to the uninsulated 7200 volt line of the Power Company and failure to insulate the street light line. Both the Power Company and the city were charged with negligence in that they knew or should have known that the tree on the west side of Smith Street had grown to such extent that its limbs were likely to come in contact with the street light wire, pushing it into the 7200 volt line, causing a short, and in failing to supply expert tree trimming necessary to remove the tree limbs from the wire.

" 'Suppliers of electricity must exercise the highest degree of care to keep their wires in such condition as to prevent injury to others who lawfully may be in close proximity to those wires. Smith v. Southwest Missouri R. Co., 333 Mo. 314, 320(1), 62 S.W.2d 761, 763 (2–4); Thornton v. Union Electric Light & Power Co., 230 Mo.App. 637, 644. 72 S.W.2d 161, 164(4). Of course,

as defendant points out, this duty did not make instant defendant an insurer of the safety of all persons. But defendant was required to use the highest degree of care to prevent injury which it could reasonably anticipate. It was not necessary, however, that defendant should have anticipated the exact injury which did occur or the exact manner in which the injury occurred. It was sufficient that a jury reasonably could find that defendant reasonably should have anticipated that some injury was likely to occur to one lawfully at or near the tree in question by reason of the presence of the line in its particular location.' Lebow v. Missouri Public Service Co., Mo.Sup., 270 S.W. 2d 713, 715.

\*   \*   \*   \*   \*   \*

"We have recently said that 'a duty to insulate wires has often been stated by this Court. 18 Am.Jur. 485, Sec. 93; 29 C.J.S. Electricity § 44, p. 589; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S.W. 654; Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S.W. 1; Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, 253 S.W. 233. If it is true, as indicated by defendant's evidence, that it is impossible to fully insulate wires carrying such high voltage as these, then certainly the exercise of the highest degree of care requires that such wires be so isolated that they will not be likely to cause injury to persons in places where they may lawfully be and may be reasonably expected.' Gladden v. Missouri Public Service Co., Mo.Sup., 277 S.W.2d 510, 515." Erbes v. Union Electric Company, Mo.Sup., 353 S.W. 2d, l. c. 664.

■ Tested by these rules, we are of the opinion that the evidence favorable to plaintiff in this case would have afforded a basis, if believed by the jury, for a finding of negligence on the part of the defendants. The Power Company permitted the insula-tion on its 7200 volt line to deteriorate and become ineffective. The previous difficulties with the line in the vicinity were sufficient to apprise the Power Company of the condition of its line. The jury could find that, in the exercise of the highest degree of care (and the city makes no claim here that any other degree of care was applicable to its operation of its street lighting system), the city should have known that its uninsulated line was in close proximity to the inadequately insulated high voltage line of the Power Company. Whether or not it was negligence on the part of the defendants to maintain their lines in such condition in the proximity which existed in this case is, in our opinion, properly a matter for the jury's determination.

Cases which involve the responsibility of an electricity supplier for the erection of its own uninsulated line are not controlling in a situation such as this. The presence of multiple lines, particularly in an inhabited urban area, presents different problems where the possibility of their contact might produce a dangerous situation. 18 Am.Jur., Electricity, Sec. 98, p. 493; 29 C.J.S. Electricity § 46, p. 593. Consequently, we do not feel obligated to bring this case within one of the four broad factual classifications expressed by the Springfield Court of Appeals in Foote v. Scott-New Madrid-Mississippi Electric Cooperative, 359 S.W.2d 40, relied upon by respondents, as encompassing the situations generally involving liability of an electricity supplier to a person who suffers injuries as a result of contact with uninsulated, energized wires.

Here, the question is not whether the Power Company, by maintaining a remote, uninsulated wire, was guilty of negligence or whether the city was responsible for a similar situation. The question here is whether or not the combination of their lines produced a situation of potential danger to the innocent user of the public street below. In our opinion, the possibility of contact between the lines, crossing in midair at a distance of from 18 to 24 inches,

was not so remote that the defendants could not have been expected to have anticipated such a possibility. The presence of the tree in front of 306 Smith Street towering to a height twice that of the power lines should have been sufficient to have brought the potential danger to the attention of the defendants.

Respondents assert that the case of Majors v. Ozark Power & Water Co., 205 Mo. App. 337, 222 S.W. 501, involved a factual situation similar to that here presented. In that case, a 50-foot tree was felled so that it struck the defendant's line, some 40 or 50 feet away, causing it to break. One of the workmen who had felled the tree came in contact with the broken wire. Failure to insulate the wire was charged as negligence. A directed verdict for defendant was upheld. Apart from the fact that both that case and the present case involved an uninsulated wire, 50 to 60 feet distant from a 50 to 60-ft. high tree, we do not find the legal situations presented in the two cases comparable. In Majors, the potential danger arose when the uninsulated line was, through no fault of the power company, thrown to the ground. In this case, the potential danger arose from the presence of the uninsulated lines where the city and Power Company had installed them and intended them to be. So long as the line in Majors was standing in its proper place, the power company had fulfilled its duty to persons in the vicinity. When the line, through no fault of the power company, was removed from its proper location, a new duty did not arise until the company had had a reasonable opportunity to remedy the situation. In this case, the defendants had not, with respect to their lines, fulfilled their duty to persons in the vicinity if the presence of the lines in their intended location was a potentially dangerous condition. Whether or not it was, a jury should determine.

The respondents argue strongly that they should not be required to have foreseen that the unconventional tree trimming methods employed by Helton would produce the situation here presented. However, respondents' argument in this regard ignores the fact that to establish their negligence, it is not required that they "have anticipated the exact injury which did occur or the exact manner in which the injury occurred. It was sufficient that a jury reasonably could find that defendant reasonably should have anticipated that some injury was likely to occur to one lawfully * * * near" the intersecting lines. Lebow v. Missouri Public Service Co., supra.

If, as we conclude, it was for the jury to determine whether or not the maintenance of the lines in the manner here involved was negligence, it was likewise a matter for the jury to determine whether or not such negligence caused or contributed to the injury of Nason. We need not characterize Helton's activity in trimming the tree in the unusual manner which he employed. Obviously, he could be found negligent in so doing. However, the jury certainly could find that Helton's negligence concurred with that of the defendants, if they found the defendants negligent. The evidence does not require the conclusion, as a matter of law, that Helton's negligence broke the chain of causation insofar as respondents are concerned. Hickman v. Union Electric Light & Power Co., Mo.Sup., 226 S.W. 570, 574(3); Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, 824(3–5).

The judgment is reversed and the cause remanded for a new trial.

COIL and HOUSER, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur except HENLEY, J., not sitting.