Edward GRATTAN and Katherine
M. Grattan, Appellants,

v.

UNION ELECTRIC COMPANY,
Respondent.

No. SC 85851.

Supreme Court of Missouri,
En Banc.

Dec. 7, 2004.

Stephen H. Ringkamp, Scott L. Kolker, St. Louis, MO, for Appellants.

James J. Virtel, Ann E. Buckley, Armstrong Teasdale, LLP, St. Louis, MO, for Respondent.

WILLIAM RAY PRICE, JR., Judge.

This case arises from an accident in which a garbage truck ran off the road and knocked down an electrical pole. Live wires fell across the roadway and onto a car driven by Mr. Grattan. Mr. Grattan claims that he suffered an electrical shock a number of minutes later. Mr. Grattan sued the electrical utility, Union Electric.[1] Union Electric obtained summary judgment and Mr. Grattan appealed. The judgment is affirmed in part and reversed in part, and the case is remanded.

## I.

Mr. Grattan bases his claim against Union Electric on two different theories of negligence. First, that Union Electric failed to insulate or isolate the electric lines where they were likely to come in contact with people. *Thornton v. Union Elec. Light & Power Co.*, 230 Mo.App. 637, 72 S.W.2d 161, 164 (1934). Second, that Union Electric failed to de-energize its wires after they were knocked down. *Calderone v. St. Joseph Light & Power Co.*, 557 S.W.2d 658, 668 (Mo.App.1977).

The trial court granted summary judgment for Union Electric under *Clinkenbeard v. City of St. Joseph*, 321 Mo. 71, 10 S.W.2d 54 (1928). *Clinkenbeard* limits the liability of an utility company for the immediate harm that results from a driver leaving the roadway and knocking down a utility pole. *Baker v. Empire Dist. Elec. Co.*, 24 S.W.3d 255, 264 (Mo.App.2000). *Clinkenbeard*, however, has no application to Union Electric's duty to shut off the power within a reasonable time after the lines were knocked down.

---

1. Union Electric is now known as Ameren UE.

## II.

The purpose of summary judgment is to resolve cases in which there is no "genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). Summary judgment can be an efficient method to resolve disputes, and its use is encouraged in appropriate situations.

Rule 74 sets out a specific and mandatory procedure to determine whether a dispute exists as to any material facts. Rule 74.04(c)(1). In addition to a filed motion, the rule requires a separate and attached statement of facts. This statement "[s]hall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits...." Rule 74.04(c)(1).

Union Electric complied with the procedures outlined in Rule 74. In its statement of undisputed facts, it offered the following.

6. On February 3, 1992, a truck owned by Waste Management of Missouri, Inc., doing business as Environmental Industries, and driven by its employee, Daniel C. Pogue, was heading east on Ladue Road near its intersection with Babler. (Ex. D, Pogue Depo., pp. 7, 30–31).

7. The truck left the road, rolled over, damaged a picket fence and struck a utility pole, breaking it. (Ex. D, Pogue Depo., pp. 43–45).

. . . .

12. Mr. Grattan saw the truck overturn, hit a pole, roll over 360 degrees, and come up on its wheels. (Ex. C, Grattan Depo., p. 28). Several other poles broke. (Ex. C, Grattan Depo., pp. 29–30).

13. The top of a pole fell six to seven feet in front of Mr. Grattan's car, and six wires landed on the car. (Ex. C, Gratten Depo., pp. 31–32).

14. Mr. Grattan testified that he reached up to open the T-top of his vehicle with his left hand and there was a flash of bright orange-ish light, and his body jumped and his head hit the T-top. (Ex. C, Grattan Depo., pp. 38–40, 42–44, 47).

. . . .

18. Mr. Grattan has testified that he believes that when he reached up to touch the T-top lever, he sustained an electrical shock that caused his heart to go into chronic atrial fibrillation, which resulted in his being treated with Amiodarone, which resulted in peripheral neuropathy. (Ex. C, Grattan Depo., pp. 79–82).

. . . .

20. Mr. Grattan testified that because of the peripheral neuropathy, he was unable to feel [a hiking] wound in the right foot, and the wound did not heal (Ex. E, Grattan Depo., p. 69).

21. An infection in the right foot led to the amputation of Mr. Grattan's right leg about five inches below the knee. (Ex. C, Grattan Depo., p. 84).

. . . .

23. The utility pole with which the truck collided ... was located approximately 9 feet 7 inches from the traveled portion of the south side of Ladue Road. See Affidavit of Randy M. Hunt, attached hereto as *Exhibit F*.

24. The utility pole with which the truck collided, ... had a date of 1963, which indicates that it was installed in 1963 or 1964. (Ex. F, Hunt Aff., ¶¶ 3–4).

Rule 74.04 required the non-movant, Mr. Grattan, to respond to the motion for sum-

mary judgment and statement of facts. Rule 74.04(c)(2). "The response shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs ... [and] shall support each denial with specific references to the discovery, exhibits, or affidavits...." *Id.* Mr. Grattan responded to Union Electric's motion for summary judgment with corresponding paragraphs, but did not respond to Union Electric's statement of facts.

Rule 74.04 states: "A response that does not comply with ... respect to any numbered paragraph in movant's statement is an admission." *Id.* Therefore, for purposes of summary judgment, and as Mr. Grattan probably intended, the factual allegations presented by Union Electric are admitted.

Union Electric also incorporated the following in its statement of facts: "3. A true and correct copy of portions of the deposition of plaintiff Edward M. Grattan taken December 17, 2001, is attached hereto as *Exhibit C.*" Within the 44 pages attached as Exhibit C, Mr. Grattan states that before he tried to escape he took time to control his breathing with his inhaler. He said that the wires began melting the metal on the top of his car and caused his jacket and the interior of the car to catch fire. Before trying to escape from his car, he also tried to put out flames on his jacket by spitting on it. Mr. Grattan testified that, five to seven minutes after the poles fell, he tried to escape and was shocked.

Finally, Rule 74.04 allows the non-movant to expand the alleged facts in the record, "in consecutively numbered paragraphs and supported in the manner prescribed [above]." Rule 74.04(c)(2). Although, Mr. Grattan did not follow this procedure, he did attach a portion of the deposition of Dr. Robert E. Nabours, one of his expert witnesses, as a response to Union Electric's assertion that "5. As a matter of law, Union Electric only owes a duty to insulate or isolate its energized lines to prevent injury that is reasonably foreseeable." Mr. Grattan's response stated: "5. Deny, as Defendant also has a duty to exercise the requisite care to keep charged lines insulated and isolated, which includes de-energizing fallen electrical lines in a timely fashion. (*Erbes v. Union Elec. Co.,* 353 S.W.2[d] 659, 664 (Mo.1962); Exhibit 1, Deposition of Dr. Robert E. Nabours, pp. 58–62, 69, 75–76, 86–88)."

Dr. Nabours stated that he had no criticism of the placement of Union Electric's poles along the highway. In Dr. Nabours' opinion, however, the power in the lines should have been shut off within 60 seconds of the accident. He explained that the fallen lines had breakers attached to them that if tripped three times within 175 seconds would cut the power. He also offered to provide a reference showing that, often in the United States, these systems are set to cycle within 45 seconds. He opined that Union Electric's sensors may not have been sensitive enough to notice the downed power lines, which, in his opinion, would explain why the lines remained active up to eight minutes after the accident.

Because there was no objection by Union Electric to the trial court about this additional testimony and because the citation given was sufficient to put the court and the parties on notice, this evidence is considered even though it was cited as a response to a legal conclusion and not in the statement of facts.

## III.

The trial court granted summary judgment for Union Electric on the basis of this Court's holding in *Clinkenbeard v. City of St. Joseph*, 321 Mo. 71, 10 S.W.2d

54 (1928). In that case, the City of St. Joseph had a street that was considerably wider on one side of the intersection than on the other; the street bottlenecked at the intersection. *Id.* at 55. A man drove straight through the intersection, over the curb, and off the road to hit an electric pole. *Id.* at 54–57. The Court held that he could not recover when the light pole fell on him because he was not in a place that he was entitled to be. *Id.* at 62. The Court couched its decision in terms of the duty and breach elements of negligence, not causation. It held that if the evidence does not show that defendant was "guilty of actionable negligence with respect to the matters charged and averred in the petition, it becomes unnecessary for us to discuss and rule the question of plaintiff's ... negligence as a matter of law." *Id.* at 63.

The law in this area has been developed by the appellate courts. In *Rothwell v. West Cent. Elec. Co-op., Inc.,* a man lost control of his vehicle and hit a pole nine feet from the roadway. 845 S.W.2d 42, 42–43 (Mo.App.1992). He was later electrocuted by the lines that fell. *Id.* The court held that the electric company was not liable to the driver because the accident occurred "entirely and wholly outside the traveled and improved roadway...." *Id.* In *Noe v. Pipe Works,* the court held "[t]here is no question that Noe left the paved portion of the road.... [T]he utility pole, no matter how close it may have been to the road, was wholly outside of the improved portion of the road and did not interfere with those making normal use of the road." 874 S.W.2d 502, 504 (Mo.App. 1994).

In *Godfrey v. Union Elec. Co.,* a drunk driver hit a utility pole three feet from the pavement. 874 S.W.2d 504, 505 (Mo.App. 1994). His passenger sued the electric company. "Godfrey was injured only be-cause the vehicle in which he was a passenger left the travelled portion of the road. As a matter of law, Godfrey [could not] establish that Union Electric owed him any duty of protection from the type of injury he suffered." *Id.*

■ *Clinkenbeard* remains the law and applies to the case at hand. Generally, a utility company cannot be held liable for injuries that immediately occur when motor vehicles leave the road and crash into poles causing either the pole or electric lines to fall.

## IV.

■ Mr. Grattan's first claim is that Union Electric failed to insulate, isolate, or maintain its lines so as to protect him from contacting them. A duty to insulate wires is well established. *Gladden v. Mo. Pub. Serv. Co.,* 277 S.W.2d 510, 515 (Mo.1955) (citations omitted). A "[s]upplier of electricity must exercise the highest degree of care to keep [its] wires in such condition as to prevent injury to others who lawfully may be in close proximity to those wires." *Erbes v. Union Elec. Co.,* 353 S.W.2d 659, 664 (Mo.1962).

■ "If ... it is impossible to fully insulate wires ..., then certainly the exercise of the highest degree of care requires that such wires be so isolated that they will not be likely to cause injury to persons in places where they may lawfully [and] reasonably [be] expected." *Gladden,* 277 S.W.2d at 515. An electric company with high powered lines "is in duty bound either to insulate such wires or place them beyond the range of contact with persons rightfully using such streets, highways, or places, and to exercise the utmost care to keep them so." *Erbes,* 353 S.W.2d at 664. "[E]specially where high-tension wires are suspended over the streets of populous cities or towns, for here the danger is great, and the care exercised must be com-

mensurate with it." *Id.* at 665; 18 Am. Jur., Electricity, Sec. 48, pp. 445, 446.

"The principle established in *Clinkenbeard* ... applies to injuries from fallen lines." *Baker v. Empire Dist. Elec. Co.,* 24 S.W.3d 255, 264 (Mo.App.2000). Mr. Grattan claims that the electric company failed to insulate or isolate these wires from the general population. *Clinkenbeard* shields Union Electric from any immediate harm caused by their displacement by a driver leaving the traveled roadway. No other specific evidence or theory was presented indicating negligence by Union Electric regarding the insulation or isolation of these power lines. The judgment is affirmed on this claim.

## V.

■ Mr. Grattan's second claim is that Union Electric was negligent in failing to shut off the power to its lines. This claim arises from a duty unrelated to the insulation and isolation of wires or the method by which the wires were displaced.

## A.

When wires become dangerous, a utility has a duty to protect the public by fixing the problem within a reasonable time. *Goddard v. St. Joseph Light & Power Co.,* 379 S.W.2d 565, 569 (Mo.1964); *see* L.S. Tellier, Annotation, *Liability of Electric Company to One Other Than Employee, Arising From Its Failure to Shut Off Current,* 32 A.L.R.2d 244(1c) (2004). In *Goddard,* this Court noted:

> So long as the line ... was standing in its proper place, the power company had fulfilled its duty to persons in the vicinity. When the line, through no fault of the power company, was removed from its proper location, *a new duty did not arise until the company*

*had had a reasonable opportunity to remedy the situation.* (emphasis added). 379 S.W.2d at 569.

■ A "reasonable opportunity" after actual notice of dangerous lines is a short period of time. *Calderone v. St. Joseph Light & Power Co.,* 557 S.W.2d 658, 663 (Mo.App.1977); *see City of Madison v. Thomas,* 130 Ga. 153, 60 S.E. 461, 463 (1908); *Lexington Util. Co. v. Parker's Adm'x,* 166 Ky. 81, 178 S.W. 1173, 1175 (1915); *Lutolf v. United Elec. Light Co.,* 184 Mass. 53, 67 N.E. 1025, 1027 (1903); *Robbins v. Thies,* 117 N.J.L. 389, 189 A. 67, 70 (1937); *Osborne v. Tenn. Elec. Power Co.,* 158 Tenn. 278, 12 S.W.2d 947, 948 (1929). In *Calderone v. St. Joseph Light & Power Co.,* an electric company's agent was told that a problem existed with a specific line. 557 S.W.2d at 663. "[That] he had it within his power ... to discontinue the deadly current to the live wire suspended over the highway within fifteen seconds after notice but for reasons of his own failed to do so, proves a jury issue on the negligent causation of a foreseeable injury." *Id.* As demonstrated in *Calderone,* actual notice of a downed wire makes the analysis simple.

■ If the electric company has not received actual notice that its lines are down, the utility must still discover the danger and cut the power within a reasonable time. The language of *Goddard,* contains no notice requirement. 379 S.W.2d at 569. Notice or a lack thereof, of course, affects the amount of time allowed as a "reasonable opportunity" to remedy the problem.

■ Other states have a similar rule. "[I]n the exercise of the highest degree of care ... [the utility company] would have known of the existence of the short in the line within a few minutes and should, in the exercise of ordinary and reasonable

care, have either repaired the break or shut off the electricity ....” *Roehrman v. D.S. & O. Rural Elec. Co-op. Ass'n,* 174 Kan. 498, 256 P.2d 872, 877–78 (1953). It was a question of fact for the jury whether the defendant, having notice by means of instruments in its plant, was negligent in failing sooner to locate a break and prevent harm coming from it. *Drimel v. Union Power Co.,* 139 Minn. 122, 165 N.W. 1058 (1918); *see Gibson County Elec. Membership Corp. v. Hall,* 32 Tenn.App. 394, 222 S.W.2d 689, 693 (1947).

> Knowledge of the actual trouble ... is not necessary. Once general knowledge is made to appear, it must then be determined whether appellant did in fact act in accordance with standard or approved practices ... and ... that degree of care which was commensurate with the existing and ... reasonably probable risks and dangers.

*Adams v. Atlantic City Elec. Co.,* 120 N.J.L. 357, 199 A. 27, 30 (1938). Beginning when the wires fell, Union Electric had a duty to discover the danger and shut off the power within a reasonable time.

### B.

The record concerning the timeliness within which Union Electric shut off the power to the lines at issue is sparse. Mr. Grattan testified that five to seven minutes after the poles fell, he was electrocuted as he tried to escape his car. Dr. Nabours testified that Union Electric had a system in place that, if tripped three times within 175 seconds, would automatically stop the power. Dr. Nabours also accepts Union Electric's statement that the circuit for the wires in question was working and locked out at 175 seconds.[2] Dr. Nabours further testified, without specific examples, that often in the United States, these systems are set to cycle in 45 seconds, and that Union Electric's system should have been set to 60 seconds. At his deposition, Dr. Nabours could not provide any such examples, although he offered to do so at a latter time. He then testified that Union Electric's sensors may not have been sensitive enough to have detected the lines that fell on Mr. Grattan's car and that Union Electric should have used different relays on its lines.

For the purpose of this motion, Union Electric did not challenge the opinion testimony of Dr. Nabours pursuant to the requirements of Section 490.05(1) or (3), RSMo.2000.[3] Neither did it come forward with evidence of its own regarding the standard of care observed in the utility industry or evidence of the system it used to detect and shut off power when dangerous conditions arise on its lines. Nor did Union Electric present evidence of whether its system was operating correctly or at what point the system actually shut down the power. Instead, Union Electric contends that Dr. Nabours conceded that the difference in time between the system it

---

**2.** This apparently is in conflict with Mr. Grattan's testimony that he was shocked five to seven minutes after the poles fell and with other testimony by Dr. Nabours that Mr. Grattan was shocked up to eight minutes later.

**3.** (1) In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

....

(3) The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

Section 490.065 (1) and (3), RSMo.2000.

**66**

utilized and the systems he advocated would not have produced a different result. The portion of Dr. Nabours' deposition contained in the record, however, is not complete on this point.

Q. It's just your criticism of UE that it didn't have, in your judgment, the right kinds of relays on the system and ... and you're also criticizing the fact that its cycles would go for 180 seconds instead of 60 seconds?

A. Well, yes, that's right.

Q. Okay.

A. Those are my criticisms.

Q. All right. But if I understand you correctly, even if Ameren [UE] had a 60 cycle, 60 total span ... before there's a permanent lockout, the same thing could have happened?

MR. KOLKER: Object to the form.

Q. Because we know more than three minutes....

Nabours Depo. p. 88.

Union Electric is only entitled to summary judgment if it shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). The present record does not establish that Union Electric has met this burden. Union Electric may renew its motion upon a more complete record at a later time.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded.

WHITE, C.J., WOLFF, STITH, TEITELMAN, and LIMBAUGH, JJ., and CALLAHAN, Sp.J., concur.

RUSSELL, J., not participating.